# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 11-654V
Filed: November 5, 2015

| | |
|---|---|
| * * * * * * * * * * * * * | UNPUBLISHED |
| KEVIN *and* HEATHER RAYMO, | |
| *legal representatives of a minor child,* | |
| H.T.R., | |
| | Chief Special Master Dorsey |
| Petitioners, | |
| | Joint Stipulation on Damages; |
| v. | Human Papillomavirus (HPV) |
| | Vaccine; Meningococcal Vaccine; |
| SECRETARY OF HEALTH | Hepatitis A Vaccine; DTaP |
| AND HUMAN SERVICES, | Vaccine; Transverse Myelitis |
| | |
| Respondent. | |
| * * * * * * * * * * * * * | |

Andrew J. Quackenbos, Domengeaux Wright Roy Edwards & Colomb, LLC, Lafayette, LA, for petitioner.
Claudia B. Gangi, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON JOINT STIPULATION[1]

On October 11, 2011, Kevin Raymo and Heather Raymo ("petitioners") filed a petition on behalf of their minor child, H.T.R., pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to -34 (2012). Petitioners alleged that, as a result of receiving human papillomavirus ("HPV"), meningococcal, hepatitis A, and diphtheria, tetanus and pertussis ("DTaP") vaccinations on October 13, 2010, H.T.R. developed transverse myelitis. Petition at Preamble. Further, petitioners alleged that H.T.R. experienced residual effects of the injury for more than six months. Id. at ¶ 18.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

On February 24, 2014, then-Chief Special Master Vowell issued a Ruling on Entitlement finding petitioner entitled to compensation.  The parties filed a stipulation on November 5, 2015.  Respondent continues to deny that the vaccines are the cause of H.T.R.'s alleged transverse myelitis and/or any other injury, but the parties nevertheless agree that a decision should be entered awarding compensation described in the stipulation, attached hereto as Appendix A.  Stip. at ¶ 7-8.  The undersigned finds the stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

The parties stipulate as follows:

(1) **An amount sufficient to purchase the annuity described in paragraphs 11(a) through 11(h) of the stipulation, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company");**

(2) **A lump sum of $754,047.00 to purchase the annuity contract described in paragraph 11(i) of the stipulation, paid to the Life Insurance Company from which the annuity will be purchased.  This amount represents compensation for vaccine related damages for past and future pain and suffering and future wage loss available under 42 U.S.C. § 300aa-15(a)(4) and 42 U.S.C. § 300aa-15(a)(3)(B), respectively.  The amount reflects that the award for projected future pain and suffering has been reduced to net present value;**

(3) **A lump sum of $26,930.62 in the form of a check payable to petitioners.  This amount represents all compensation for past unreimbursed vaccine related expenses available under 42 U.S.C. § 300aa-15(a)(1)(B); and**

(4) **A lump sum of $97,561.00 in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of H.T.R. for the benefit of H.T.R.  This amount represents compensation for future life care plan expenses for the first year following the entry of judgment. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of the estate of H.T.R.**

Id. ¶ 8.

The undersigned approves the requested amounts for petitioner's compensation.  Accordingly, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[3]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

KEVIN AND HEATHER RAYMO,
legal representatives of minor child
H.T.R.,

       Petitioners,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

       Respondent.

No. 11-654V
Special Master Vowell
ECF

## STIPULATION

The parties hereby stipulate to the following matters:

1. Kevin and Heather Raymo, legal representatives of minor child, HTR ("petitioners")
filed a petition for vaccine compensation under the National Vaccine Injury Compensation
Program, 42 U.S.C. § 300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation
for injuries allegedly related to HTR's receipt of the human papillomavirus vaccine ("HPV"), the
meningococcal vaccine, the hepatitis A vaccine, and the diphtheria, tetanus and acellular
pertussis vaccine ("DTaP"), which vaccines are contained in the Vaccine Injury Table (the
"Table"), 42 C.F.R. § 100.3(a).

2. Petitioner received the vaccines on or about October 13, 2010.

3. The vaccines were administered within the United States.

4. Petitioners allege that the vaccine(s) caused HTR to develop transverse myelitis and
related sequelae, and that she experienced residual effects of her injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action
for damages as a result of HTR's condition.

6. On March 19, 2014, then-Chief Special Master Vowell determined that petitioners are entitled to vaccine compensation after finding that HTR suffered from vaccine-related acute autoimmune transverse myelitis.

7. Respondent continues to maintain her contrary position and denies that the vaccines are the cause of HTR's alleged transverse myelitis and/or any other injury, but will not seek review of the special master's determination of entitlement upon its memorialization as a reviewable decision.

8. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 9 of this Stipulation.

9. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

(a)  An amount sufficient to purchase the annuity contract described in paragraphs 11(a) through 11(h) below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company");[1]

(b) A lump sum in the amount of $754,047.00 to purchase the annuity contract described in paragraph 11(i) below, paid to the Life Insurance Company from which the annuity will be purchased.  This amount represents compensation for vaccine related damages for past and future pain and suffering and future wage loss available under 42 U.S.C. § 300aa-15(a)(4) and 42 U.S.C. § 300aa-15(a)(3)(B), respectively.  The amount reflects that the award for projected future pain and suffering has been reduced to net present value;

---

[1]  Notwithstanding references herein to "the Life Insurance Company" or "the annuity contract," to satisfy the conditions set forth herein, in respondent's sole and absolute discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

(c) A lump sum of $26,930.62 in the form of a check payable to petitioners. This amount represents all compensation for past unreimbursed vaccine related expenses available under 42 U.S.C. § 300aa-15(a)(1)(B); and

(d) A lump sum of $97,561.00 in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of HTR for the benefit of HTR. This amount represents compensation for future life care plan expenses for the first year following the entry of judgment. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of the estate of HTR.

10.  The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

(a)     A.M. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;

(b)     Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;

(c)     Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;

(d)     Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

11.  The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of HTR, pursuant to which the Life Insurance Company will agree to make payments periodically to petitioners for the following items of compensation:

(a)  For future unreimbursable health insurance, Medicare Part A and Part B, Arkansas Blue Cross Medicare Advantage MA-PD, and Arkansas Blue Cross Medicare Advantage MA-PD Prescription Drug Benefit expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,555.84 to be paid up to the anniversary of the date of judgment in year 2021, then beginning on the anniversary of the date of judgment in year 2021, an annual amount of $7,257.56 to be paid up to the anniversary of the date of judgment in year 2064, then beginning on the anniversary of the date of judgment in year 2064, an annual amount of $9,045.52 to be paid for the remainder of HTR's life, all amounts increasing at the rate of five percent (5.0%), compounded annually from the date of judgment;

(b)  For future unreimbursable Hoyer Lift, Hoyer Lift Batteries, Slings, Lift Maintenance, Hospital Table and Cart, Transfer Board, Stander, FES Bike, Replacement Electrodes for FES

Bike, Arm Bike, Wheelchair Maintenance, Wheelchair Cushions, Shower Wheelchair, Medical Alert Bracelets, and Urinary Drainage Bags expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,130.77 to be paid up to the anniversary of the date of judgment in year 2017, then beginning on the anniversary of the date of judgment in year 2017 an annual amount of $6,216.61 to be paid up to the anniversary of the date of judgment in year 2018, then beginning on the anniversary of the date of judgment in year 2018, an annual amount of $6,141.50 to be paid up to the anniversary of the date of judgment in year 2020, then beginning on the anniversary of the date of judgment in year 2020, an annual amount of $14,174.00 to be paid up to the anniversary of the date of judgment in year 2021, then beginning on the anniversary of the date of judgment in year 2021, an annual amount of $7,783.17 to be paid for the remainder of HTR's life, all amounts increasing at the rate of five percent (5.0%), compounded annually from the date of judgment;

(c)  For future unreimbursable Case Management Services expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,100.00 to be paid for the remainder of HTRs life, all amounts increasing at the rate of five percent (5.0%), compounded annually from the date of judgment;

(d)  For future unreimbursable Miralax, Dulcolax Suppositories, and Ultimate Flora Probiotic, beginning on the first anniversary of the date of judgment, an annual amount of $776.96 to be paid for the remainder of HTR's life, all amounts increasing at the rate of five percent (5.0%), compounded annually from the date of judgment;

(e)  For future unreimbursable Diapers, Pads, Incontinence Wipes, Lotion, Hand Sanitizer, and Antibacterial Soap expenses, beginning on the first anniversary of the date of judgment, an annual amount of $988.02 to be paid up to the anniversary of the date of judgment in year 2020, then beginning on the anniversary of the date of judgment in year 2020, an annual amount of $1,159.57 to be paid for the remainder of HTR's life, all amounts increasing at the rate of three percent (3.0%), compounded annually from the date of judgment;

(f)  For future unreimbursable Home Health Aide and Home Attendant Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $19,546.80 to be paid up to the anniversary of the date of judgment in year 2020, then beginning on the anniversary of the date of judgment in year 2020, an annual amount of $30,154.80 to be paid for the remainder of HTR's life, all amounts increasing at the rate of three percent (3.0%), compounded annually from the date of judgment;

(g)  For future Van and Van Modification expenses, beginning on the first anniversary of the date of judgment, an annual amount of $53.50 to be paid up to the anniversary of the date of judgment in year 2020, then beginning on the anniversary of the date of judgment in year 2020, an annual amount of $32,053.50 to be paid up to the anniversary of the date of judgment in year 2021, then beginning on the anniversary of the date of judgment in year 2021, an annual amount of $4,624.93 to be paid for the remainder of HTR's life, all amounts increasing at the rate of three percent (3.0%), compounded annually from the date of judgment;

(h)  For future Home Modifications expenses, beginning on the first anniversary of the date of judgment, an annual amount of $550.00 to be paid up to the anniversary of the date of

judgment in year 2020, then beginning on the anniversary of the date of judgment in year 2020, an annual amount of $66,927.50 to be paid up to the anniversary of the date of judgment in year 2021, then beginning on the anniversary of the date of judgment in year 2021, an annual amount of $1,824.83 to be paid up to the anniversary of the date of judgment in year 2029, then beginning on the anniversary of the date of judgment in year 2029, an annual amount of $2,969.83 to be paid up to the anniversary of the date of judgment in year 2030 then beginning on the anniversary of the date of judgment in year 2030, an annual amount of $1,967.96 to be paid up to the anniversary of the date of judgment in year 2035, then beginning on the anniversary of the date of judgment in year 2035, an annual amount of $51,930.46 to be paid up to the anniversary of the date of judgment in year 2036, then beginning on the anniversary of the date of judgment in year 2036, an annual amount of $1,967.96 to be paid for the remainder of HTR's life, all amounts increasing at the rate of three percent (3.0%), compounded annually from the date of judgment;

(i)  For past and future pain and suffering and future lost wages, beginning on February 2, 2020, a monthly amount of $2,158.33 to be paid for 30 years certain, increasing at the rate of four percent (4.0%), compounded annually from February 2, 2020.  The purchase price of this portion of the annuity contract shall be neither less than nor greater than $754,047.00.  In the event that the cost of these specific annuity payments set forth in this paragraph 11(i) varies from $754,047.00 at the time of funding, then the payments identified above in this subparagraph shall be adjusted upward or downward to ensure that the total cost of this portion of the annuity is neither less than nor greater than $754,047.00.  Should HTR pre-decease the exhaustion of payments described in this paragraph, any remaining payments shall be made payable to the estate of HTR.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments described in paragraphs 11(a) - (h) may be provided to the petitioners in monthly, quarterly, annual or other installments.  The "annual amounts" set forth above describe only the total yearly sum to be paid to petitioners and do not require that the payment be made in one annual installment.  Petitioners will continue to receive the annuity payments described in paragraphs 11(a) - (h) from the Life Insurance Company only so long as HTR is alive at the time that a particular payment is due.  Petitioners will receive the annuity payments described in paragraph 11(i) from the Life Insurance Company for the guaranteed period indicated above.  Should HTR pre-decease the exhaustion of payments described in paragraph 11(i) above, any remaining payments shall be made payable to the estate of HTR.  Written notice to the

5

Secretary of Health and Human Services and the Life Insurance Company shall be provided within twenty (20) days of HTR's death.

12.  The annuity contract(s) will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation.  The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 9 herein, and any amounts awarded pursuant to paragraph 13, and that they do not guarantee or insure any of the future annuity payments.  Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

13.  As soon as practicable after entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorney's fees and costs incurred in proceeding upon this petition.

14.  Petitioners and their attorney represent that they have identified to respondent all known sources of payment for items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), including State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or entities that provide health services on a pre-paid basis.

15.  Payments made pursuant to paragraph 9 and any amounts awarded pursuant to paragraph 13 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

16.  The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation, either immediately or as part of the annuity contract, will be used solely for the benefit of HTR as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

17.  Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of HTR's estate under the laws of the State of Arkansas.  No payments pursuant to paragraphs 9(a), (b), or (d) of this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/conservator(s) of HTR's estate.  If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of HTR at the time a payment pursuant to paragraphs 9(a), (b), or (d) of this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of HTR upon submission of written documentation of such appointment to the Secretary.

18.  In return for the payments described in paragraphs 9 and 13, petitioners, in their individual capacities and as legal representatives of HTR, on behalf of themselves, HTR and her heirs, executors, administrators, successors and/or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or

7

unsuspected personal injuries to or death of HTR resulting from, or alleged to have resulted from, the vaccines administered on or about October 13, 2010, as alleged by petitioners in a petition for vaccine compensation filed on or about October 11, 2011, in the United States Court of Federal Claims as petition No. 11-654V.

19.  If HTR should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

20.  If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

21.  This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 13 above.  There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to.  The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

22.  Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

23.  This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the vaccines caused HTR's alleged transverse myelitis and/or any other injury.

8

24.  All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of HTR.

END OF STIPULATION

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

Respectfully submitted,

**PETITIONERS:**

KEVIN RAYMO, legal representative of HTR

HEATHER RAYMO, legal representative of HTR

**ATTORNEY OF RECORD FOR
PETITIONERS:**

ANDREW J. QUACKENBOS
DOMENGEAUX WRIGHT ROY
EDWARDS & COLOMB LLC
556 Jefferson Street
5th Floor
Lafayette, LA 70501
(337) 233-3033

**AUTHORIZED REPRESENTATIVE
OF THE ATTORNEY GENERAL:**

VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

**AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:**

A. MELISSA HOUSTON, MD, MPH, FAAP
Acting Director, Division of
Vaccine Injury Compensation (DVIC);
Director, Countermeasures Injury
Compensation Program (CICP)
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

Dated:   11 - 5 -15

**ATTORNEY OF RECORD FOR
RESPONDENT:**

CLAUDIA B. GANGI
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
(202) 616-4138

10