# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 11-654V
Filed: November 2, 2016
[TO BE PUBLISHED]

\* \* \* \* \* \* \* \* \* \* \* \* \*
KEVIN RAYMO and HEATHER     \*
RAYMO, Legal Representatives of a Minor   \*
Child, H.T.R.,     \*
    \*       Chief Special Master Dorsey
      Petitioners,     \*
    \*       Attorneys' Fees and Costs;
v.     \*       Reasonable Hourly Rate; Reasonable
    \*       Hours Expended; Reasonable Costs
SECRETARY OF HEALTH     \*
AND HUMAN SERVICES,     \*
    \*
      Respondent.     \*
\* \* \* \* \* \* \* \* \* \* \* \* \*

Andrew J. Quackenbos, Domengeaux Wright Roy Edwards & Colomb, LLC, Lafayette, LA, for petitioners.
Claudia B. Gangi, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 11, 2011, Kevin and Heather Raymo ("petitioners") filed a petition on behalf of their minor child, H.T.R., pursuant to the National Vaccine Injury Compensation Program.[2] Petitioners alleged that as a result of receiving the human papillomavirus ("HPV"),

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

meningococcal, hepatitis A, and diphtheria, tetanus and acellular pertussis ("DTaP") vaccinations on October 13, 2010, H.T.R. developed transverse myelitis. Petition at Preamble. Further, petitioners alleged that H.T.R. experienced residual effects of the injury for more than six months. Id. at ¶ 18.

On February 24, 2014, then-Chief Special Master Vowell issued a Ruling on Entitlement finding petitioners entitled to compensation. On November 5, 2015, the parties filed a stipulation. The stipulation stated that respondent continued to deny that the vaccines were the cause of H.T.R.'s alleged transverse myelitis and/or any other injury, but the parties nevertheless agreed that a decision should be entered awarding the compensation described in the stipulation. Stipulation at ¶¶ 7-8. The undersigned issued a Decision awarding petitioners compensation pursuant to the stipulation the same day.[3]

On March 4, 2016, petitioners filed an application for attorneys' fees and costs, requesting $532,976.90[4] in attorneys' fees and $195,724.50 in attorneys' costs, for a total fees and costs award of $728,701.40. Petitioners' ("Pet'rs") Application ("App.") at 2-4. In accordance with General Order #9, petitioners' counsel states that petitioners did not pay any out-of-pocket costs in relation to this matter. Id. at 3; See Pet'rs' App., Ex. 4. Respondent filed a response to petitioners' application on March 15, 2016, stating:

> Based on a survey of fee awards in similar cases and her experience litigating Vaccine Act claims, respondent asserts that a reasonable amount for fees and costs in the present case would fall between $97,000.00 to $120,000.00. Respondent therefore respectfully recommends that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs within that range.

---

[3] Pursuant to the terms of the stipulation, petitioners were awarded:

> (1) An amount sufficient to purchase the annuity described in paragraphs 11(a) through 11(h) of the stipulation. . . ; (2) A lump sum of $754,047.00 to purchase the annuity contract described in paragraph 11(i) of the stipulation . . . for vaccine related damages for past and future pain and suffering and future wage loss . . .; (3) A lump sum of $26,930.62 . . . . for past unreimbursed vaccine related expenses . . . ; (4) A lump sum of $97,561.00 . . . . for future life care plan expenses for the first year following the entry of judgment.

Decision dated November 5, 2015, at 2; Stipulation at ¶ 8.

[4] Petitioners' application indicates that the requested fees total $531,661.90. Pet'rs' App. at 2. This appears to be a math error, as the sum of the fees requested by firm comes to $532,976.90 ($421,434.40 for the Andry Law Group; $110,062.50 for Domengeaux Wright; and $1,480.00 for Nixon & Light). See id.

Respondent's ("Resp's") Response ("Resp.") at 3 (footnote omitted).  Petitioners filed a reply in support of their application on March 24, 2016, and filed a supplemental application for attorneys' fees and costs on May 17, 2016, requesting an additional $2,550.00 in attorneys' fees.  Pet'rs' Supplemental ("Supp.") App. at 1.  Thus, petitioners' final total requested fees and costs total $731,251.40.

On July 15, 2016, the undersigned issued a decision awarding petitioners $354,809.31 in attorneys' fees and costs.  In the initial decision, she did not compensate petitioners for $14,144.50 of work performed by Malcolm M. Dienes, LLC, CPA, ("Dienes") because petitioners did not provide an invoice detailing the work performed.  On August 5, 2016, petitioners filed a motion for reconsideration of the undersigned's July 15, 2016 decision, which included an additional invoice in the amount of $14,144.50 from Dienes.  Pet'rs' Mot. for Reconsideration dated Aug. 5, 2016 (ECF No. 113), at 3-5.

On August 15, 2016, petitioner filed a motion for review of the undersigned's July 15, 2016 decision.  Pet'rs' Mot. for Review dated August 15, 2016 (ECF No. 114).  The case was assigned to Judge Charles Lettow, and on October 6, 2016, Judge Lettow remanded the case to the undersigned for the limited purpose of ruling on petitioners' pending motion for reconsideration.  Order dated October 6, 2016 (ECF No. 119).  The remand extended until November 3, 2016.  Id.  The undersigned allowed respondent time to respond to petitioners' motion for reconsideration, but respondent did not file a response.

On October 26, 2016, the undersigned granted petitioners' motion for reconsideration, finding that the documentation regarding the work of Dienes, submitted by petitioners in their motion for reconsideration, was sufficient to support an additional award of $14,144.50.  This decision reflects that the undersigned has compensated petitioners in full for the services of Dienes, awarding the requested total of $19,892.00.  The Clerk of Court withdrew the July 15, 2016 decision.  Order dated October 26, 2016 (ECF No. 123).  This new decision reflects the undersigned's decision to grant petitioners' motion for reconsideration and award an additional $14,144.50 in costs for the services of Dienes.  Thus, the undersigned now awards petitioners a total of **$368,953.81** in attorneys' fees and costs.

The $731,251.40 in attorneys' fees and costs requested in this case was dramatically higher than respondent's suggested range of $97,000.00 to $120,000.00.  Respondent did not cite to any particular cases in support of her suggested range, so it is not clear on what factors her range was based.  As petitioners explain in their reply, this was a fairly complex case in both the entitlement and damages phases.  H.T.R. was 11 years old at the time of her vaccinations, and suffered rapidly progressive transverse myelitis resulting in total paralyzation below the T10 vertebrae in her spine and complete loss of bowel and bladder control.  See Pet'rs' Reply at 1; Raymo v. Sec'y of Health & Human Servs., No. 11-654V, 2014 WL 1092274, at *2 (Fed. Cl. Spec. Mstr. Feb. 24, 2014).  Petitioners state that the entitlement phase of this case "involved complicated and novel issues relating to causation," and "there were thousands of pages of pleadings, medical records, medical literature, and other exhibits relating to the nature of the [sic] H.T.R.'s injuries and the vaccines she was administered."  Pet'rs' Reply at 2.  In her Ruling on Entitlement, then-Chief Special Master Vowell noted:

> This case . . . presents several unusual features.  Between filing the petition . . . and the causation hearing in Little Rock, Arkansas in November 2012, petitioners altered their causation theory several times.  Although alteration of a causation theory is relatively common, petitioners proceeded to hearing on mutually exclusive causation theories based on different fact scenarios and different diagnoses (ATM or a spinal cord infarction).  One of petitioners' experts, Dr. Daniel Becker agreed with respondent's primary expert, Dr. John Sladky, concerning both diagnosis and factual scenario, although they disagreed on the precise mechanism of injury. . . .

> Another unusual feature in this case is that the filed medical records support both factual scenarios upon which the experts based their opinions because the records are somewhat vague and contradictory about when onset of HTR's symptoms occurred.  Determining precisely when onset of HTR's first symptoms of transverse myelitis occurred is crucial to the causation opinions.  If HTR's symptoms progressed from onset to nadir (the point of maximum impairment) in less than four hours, the autoimmune causation theory lacks a factual basis, according to Dr. Marcel Kinsbourne, the expert who advanced the theory.

Raymo, 2014 WL 1092274, at *2-3.  In addition, the case involved a lengthy damages phase, requiring "[e]xtensive consultations with life care planners, physicians, nurses, educators, and economists" in order to determine H.T.R.'s future needs, which were especially complex given her young age and severe injuries.  Pet'rs' Reply at 3.  The parties began damages discussions "far apart on nearly every component of compensation" other than pain and suffering, and resolution of damages items required extended negotiations.  Id.  The case also required travel by counsel and experts to Little Rock for the hearing and life care planning visits.  Id.  Thus, though the total attorneys' fees and costs awarded are substantially higher than respondent's suggested range (yet also substantially lower than petitioners' requested total), the total awarded is reasonable based on the features and complexities of this particular case.

## I.    Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.  42 U.S.C. § 300aa-15(e)(1).  In this case, petitioners were awarded compensation pursuant to a Ruling on Entitlement and subsequent stipulation for an award.  Petitioners are therefore entitled to an award of reasonable attorneys' fees and costs.[5]

---

[5] In addition, § 300aa-15(e)(3) states that "[n]o attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court under paragraph (1)."  This

a. **Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48 (internal quotations omitted). In determining an award of attorneys' fees, a court should generally use the forum rate, i.e., the District of Columbia rate. Id. at 1348. However, an exception to the forum rule applies where the bulk of an attorney's work is performed outside of the forum, and where there is a "very significant" difference in compensation rates between the place where the work was performed and the forum. Id. at 1349 (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. Rodriguez, 2009 WL 2568468, at *8. Block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored. See, e.g. Broekelschen v. Sec'y of Health & Human Servs., No 07-137V, 2008 WL 5456319, at *4-5 (Fed. Cl. Spec. Mstr. Dec. 17, 2008). The Vaccine Program's "Guidelines for Practice" state that "[e]ach task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request." Guidelines for Practice Under the National Vaccine Injury Compensation Program, Section X, Chapter 3, Part B(1)(b), 68 (revised January 7, 2016), available at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-1-7-16.pdf (last visited May 20, 2016).

---

would include any amounts requested by counsel that the undersigned finds not to be compensable.

In determining a reasonable number of hours expended, a line-by-line evaluation of the fee application is not required.  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484, aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  Id.  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  Saxton, 3 F.3d at 1521.

### i.    Hourly Rates

Attorneys from three separate law firms worked on this case: The Andry Law Group, LLC; Domengeaux Wright Roy Edwards & Colomb, LLC ("Domengeaux Wright"); and Nixon & Light, Attorneys at Law.  Pet'rs' App. at 2.  The Andry Law Group is located in New Orleans, Louisiana.  Domengeaux Wright is located in Lafayette, Louisiana, and Nixon & Light is located in Little Rock, Arkansas.

Forum rates are generally used to determine an attorney's hourly rate except when the majority of an attorney's work is done outside of the forum and there is a "*very significant* difference in compensation favoring D.C."  Avera, 515 F.3d at 1349 (quoting Davis County, 169 F.3d at 758) (emphasis in original).  Nearly all of the legal work in this case was performed in Louisiana, and the entitlement hearing was held in Little Rock, Arkansas.  Pet'rs' App., Ex. 1 at 4.  The hourly rates that petitioners seek are based on local Louisiana and Arkansas rates.  See Pet'rs' App. at 2.  Neither petitioners nor respondent have addressed the question of whether local or forum rates should be used.  The only evidence of prevailing rates submitted by petitioners pertains to New Orleans and Little Rock rates, and respondent did not submit any evidence regarding prevailing rates.

Using local rates pursuant to the Davis County exception "prevents a result that 'would produce windfalls' to counsel who practice in much less expensive legal markets."  Avera, 515 F.3d at 1349 (quoting Davis County, 169 F.3d at 759-60).  A comparative cost of living calculator shows there is a 55.67% difference in cost of living between New Orleans, Louisiana and Washington, D.C., a 58.87% difference between Lafayette, Louisiana and Washington, D.C., and a 54.20% difference between Little Rock, Arkansas and Washington, D.C.[6]  Such a dramatic difference in the cost of living suggests the prevailing attorneys' rates are substantially lower in Louisiana and Arkansas than in Washington, D.C.  In addition, New Orleans, Lafayette, and Little Rock are not entitled to increased locality pay under the General Schedule classification and pay system, a system that covers the majority of civilian white-collar Federal employees in professional, technical, administrative, and clerical positions.[7]  Washington, D.C., on the other

---

[6] The Cost of Living Calculator, http://www.bankrate.com/calculators/savings/moving-cost-of-living-calculator.aspx (last visited May 23, 2016).

[7] See General Schedule Classification and Pay, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited May 27, 2016); 2016 General Schedule (GS)

hand, received a locality payment of 24.78% for 2016. Id. The determination of whether an area receives locality pay is based on an analysis of pay levels for *non*-Federal workers in the given geographic area, as determined by surveys conducted by the United States Bureau of Labor Statistics. Id.

In Mooney v. Sec'y of Health & Human Servs., No. 05-266V, 2014 WL 7715158, (Fed. Cl. Spec. Mstr. Dec. 29, 2014), the special master found the parties had conceded that the Davis exception applied where respondent asserted that local rates should apply, petitioners did not challenge this assertion, and the only evidence produced regarding hourly rates was focused exclusively on various legal services rendered in the local area. 2014 WL 7715158, at *3. In this case, the evidence submitted by petitioners focuses exclusively on local rates. Nowhere in their application, reply, or supplemental fee application, do petitioners indicate that they believe forum rates should apply. Based on the evidence regarding the cost of living and pay levels showing a very significant difference between prevailing local and forum rates, the undersigned will determine reasonable hourly rates in this case using local rates.

## A. Hourly Rates: Andry Law Group

Petitioners request $421,434.40[8] in attorneys' fees for the Andry Law Group. Pet'rs' App. at 2. This represents compensation for work performed by attorney Jonathan B. Andry, attorney Michelle Purchner Cumberland, and paralegal Rosalind Lobrano. Pet'rs' App., Ex. 1 at 1.[9] Mr. Andry's time is billed at a rate of $350 per hour, Ms. Cumberland's time at $250 per hour, and Ms. Lobrano's time at $100 per hour. Id. at 4.

The Andry Law Group is located in New Orleans, Louisiana. In support of the requested rates, Mr. Andry states that in Turner v. Murphy Oil Co. USA, Inc., 427 F. Supp. 2d 830, (E.D. La. 2007), the United States District Court for the Eastern District of Louisiana held that the

---

Locality Pay Tables, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2016/general-schedule/ (last visited May 27, 2016).

[8] Petitioners' application, Mr. Andry's affidavit, and the billing record contain various discrepancies and mistakes. In Mr. Andry's affidavit, he states that he is requesting $421,399.40 in attorneys' fees. Pet'rs' App., Ex. 1 at 7. On the other hand, petitioners' application itself and the Andry Law Group's billing record indicate that the fees requested total $421,434.40. See Pet'rs' App. at 2; Pet'rs' App., Ex. 1A at 54. Upon review of the billing record, the undersigned also notes that several entries contain errors. For example, on July 6, 2012, Mr. Andry billed $18.90 for 5.40 hours of work, when presumably he meant to bill $1,890.00 (5.40 hours at $350 per hour). Pet'rs' App., Ex. 1A at 28. Similarly, Mr. Andry's affidavit estimates that he billed 733 hours. Pet'rs' App., Ex. 1 at 1. Based on the billing record, however, the undersigned calculates that Mr. Andry actually billed 783.10 hours. See generally, Pet'rs' App., Ex. 1A. In this Decision, the undersigned's calculations for all attorneys' fees are based on **the hours billed in the billing records**.

[9] In the billing records, Ms. Cumberland appears as MCP, Mr. Andry as JBA, and Ms. Lobrano as RL.

prevailing hourly rates in the New Orleans area range from $300 to $400 per hour for partners and $100 to $200 for associates. Pet'rs' App., Ex. 1 at 4 (citing Turner, 427 F. Supp. 2d at 868). Mr. Andry asserts that the rates billed in this case are "reasonable and are all within the prevailing rate range as set out by [the court in Turner]," and are also the rates he and Ms. Cumberland normally receive in hourly billing cases. Id.

The undersigned does not find Turner to be particularly strong evidence of "the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48. Turner was a class action suit in which the plaintiffs sought compensation for hurricane-induced oil refinery tank rupture. See 472 F. Supp. 2d at 835. The case was settled, and the settlement agreement provided, inter alia, that all common-benefit expenses, including attorneys' fees, incurred in connection with prosecuting the case would be paid, with the amount of reasonable fees left entirely to the court's discretion. Id. at 839, 845. The court calculated attorneys' fees as a percentage of the common fund, and then used a lodestar analysis "not . . . to calculate a specific fee, but only to provide a rough cross check on the reasonableness of the fee arrived at by the percentage method." Id. at 861. In doing so, the court stated that ranges of $300 to $400 per hour for "members," $100 to $200 for associates, and $50 to $80 per hour for paralegals reasonably reflected the prevailing hourly rates in the Eastern District of Louisiana (which includes New Orleans). Id. at 868-89. Thus, although Turner set forth prevailing rates for the New Orleans area, it is not clear the rates were for services similar to vaccine work, nor that the stated rates were meant to be used in an actual lodestar analysis rather than a "rough cross check" on the reasonableness of the percentage based fee award. In addition, Turner is a 2007 decision, whereas fees in this case are requested for 2010 to 2015.

"When the parties do not provide reliable evidence, the court can look to other evidence to establish a reasonable hourly rate." Dougherty v. Sec'y of Health & Human Servs., No. 05-700V, 2011 WL 5357816 at *6 (Fed. Cl. Spec. Mstr. Oct. 14, 2011) (citing Rupert ex rel. Rupert, v. Sec'y of Health & Human Servs., 52 Fed. Cl. 684, 688–89 (2002)). Local Louisiana rates for vaccine litigation were recently determined in Mooney, No. 05-266V, 2014 WL 7715158, (Fed. Cl. Spec. Mstr. Dec. 29, 2014). In Mooney, the special master awarded an attorney with 15 years of experience a rate of $275 per hour for Vaccine Program work performed in Baton Rouge, Louisiana, in 2014. Id. at *9. In arriving at the Baton Rouge rate, the special master relied in part on evidence of rates in New Orleans, which she determined constituted a similar legal market to Baton Rouge with parallel prevailing rates beginning in August 2005 (post-Hurricane Katrina). Id. at *8 n.19. The special master compensated paralegal tasks at a rate of $110 per hour. Id. at *11.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48. As opposed to Turner, Mooney dealt with local rates specifically for vaccine litigation, and was a 2014, rather than 2007, decision. The undersigned finds the rates in Mooney are a more useful reference point than the rates stated in Turner for determining rates for the Andry Law Group in this case.

8

Counsel in Mooney had 15 years of experience, and had been practicing in the Vaccine Program for 12 years.  Id. at *4.  He had filed primarily Omnibus Autism Proceeding ("OAP") cases, which were all ultimately denied compensation, but had also filed six non-OAP cases.  Id.  In 2014, Mr. Andry had been practicing law for 24 years and Ms. Cumberland had been practicing law for 8 years.[10]  See Pet'rs' App., Ex. 1 at 3.  From a search of CM/ECF, it appears that this is the only vaccine case the Andry Law Group has handled.  Because the Andry Law Group is new to the Program, it is difficult to determine their reputation and skill level as compared to other practitioners in the Program.  However, along with petitioners' other counsel, they obtained a favorable result in this case, and petitioners received a substantial award of compensation pursuant to a Ruling on Entitlement issued by then-Chief Special Master Vowell.  Based on the experience, skill, and reputation of Mr. Andry and Ms. Cumberland, the undersigned finds that the rates awarded in Mooney are also reasonable local rates for counsel in this case.  An upward adjustment from the Mooney rates is warranted for Mr. Andry to reflect the fact that he has more years of legal experience than counsel in Mooney.  A downward adjustment is warranted for Ms. Cumberland, as she has less experience than counsel in Mooney.

In McCulloch v. Sec'y of Health and Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), the special master determined ranges of reasonable 2014/2015 forum rates based on attorneys' years of legal experience.[11]  Although McCulloch dealt with forum rates and thus the particular rate ranges set are not applicable here, the undersigned finds the framework, which  differentiates rate ranges based on an attorneys' years of experience useful, and adopts it here to determine an appropriate adjustment of Mooney rates based on counsel's experience.

Using the McCulloch framework, counsel in Mooney, with 15 years of experience, would fall in the 11 to 19 year experience bracket.[12]  Mr. Andry performed work on this case from 2010 to 2015, and had 20 or more years of experience throughout that time.  Ms. Cumberland performed work in this case from 2011 to 2013.  In 2011, she had 5 years of experience, and in 2013, she had 7 years of experience, and thus falls into the bracket of attorneys with 4 to 7 years

---

[10] Mr. Andry's affidavit states that Ms. Cumberland received her J.D. in 2005.  Pet'rs' App., Ex. 1 at 3. However, the undersigned notes that Ms. Cumberland was admitted to the Louisiana State Bar in 2006.  See Louisiana State Bar Association Membership Directory, https://www.lsba.org/public/membershipdirectory.aspx (last visited May 18, 2016).  Thus, her years of experience will be counted starting in 2006.  Mr. Andry was admitted to the Louisiana State Bar in 1990.  Id.  His years of experience are counted starting in 1990.

[11] The experience categories in McCulloch were: less than 4 years of experience, 4 to 7 years, 8 to 10 years, 11 to 19 years, and more than 20 years of experience.  2015 WL 5634323, at *19.

[12] Although counsel in Mooney had 15 years of experience, the special master also more generally stated the rate of $275 per hour would be reasonable for attorneys with "[10] or more" years of experience.  Mooney, 2014 WL 7715158, at *9.  As noted, however, McCulloch placed attorneys with 15 versus 10 years of experience in separate experience brackets.  The McCulloch framework will be used to determine experience ranges in this case.

of experience.  In <u>McCulloch</u>, all other factors being equal, the rate range for an attorney with 20 years of experience was $50 per hour higher than the range for an attorney with 11 to 19 years of experience.[13]  In turn, the rate range for an attorney with 11 to 19 years of experience was $75 per hour higher than the range for an attorney with 4 to 7 years of experience.  <u>See</u> 2015 WL 5634323, at *19.

**The undersigned finds that $325 per hour is a reasonable rate for Mr. Andry's work in this case.**  This represents the <u>Mooney</u> rate of $275 per hour plus $50 per hour to reflect Mr. Andry's greater overall experience.  **The undersigned finds that $200 per hour is a reasonable rate for Ms. Cumberland's work.**  This rate represents the <u>Mooney</u> rate of $275 per hour minus $75 per hour to reflect Ms. Cumberland's lesser overall experience.  **Ms. Lobrano's requested rate of $100 per hour is reasonable.**

### B. Hourly Rates: Domengeaux Wright

Petitioners request a total of $112,612.50 in attorneys' fees for Domengeaux Wright. Pet'rs' App. at 2; Pet'rs' Supp. App., Ex. 1A, at 1.  This represents compensation for work performed by attorneys Andrew J. Quackenbos and Bob F. Wright, and paralegal Darlene Pelletier.  <u>See</u> Pet'rs' App., Ex. 2 at 4.[14]  Mr. Quackenbos' time is billed at a rate of $250 per hour, Mr. Wright's time is billed at a rate of $425 per hour, and Ms. Pelletier's time is billed at a rate of $100 per hour.  <u>Id.</u>

Domengeaux Wright is located in Lafayette, Louisiana.  In support of the requested rates, Mr. Quackenbos states that the other cases he handles at present are contingency fee cases, but if he "were to accept [a] case today at an hourly rate, [he] would charge at least $250 per hour." Pet'rs' App., Ex. 2 at 4.  He states that the vast majority of cases Mr. Wright handles are also contingency cases, but that Mr. Wright charges $500 per hour in cases that he handles on an hourly basis.  <u>Id.</u>  Finally, Mr. Quackenbos states that the rate charged for Ms. Pelletier's work is "commensurate with the rate charged by paralegals for hourly work in similar matters."  <u>Id.</u> Other than these statements about counsel's usual rates, Domengeaux Wright did not submit evidence of prevailing local rates.

A comparative cost of living calculator shows that the cost of living is approximately 2 percent lower in Lafayette than in New Orleans.[15]  Further, as noted above, neither Lafayette nor New Orleans is entitled to increased locality pay under the General Schedule classification and

---

[13] In <u>McCulloch</u>, the rate range for attorneys with more than 20 years of experience was $350 to $425.  2015 WL 5634323, at *19.  The range for attorneys with 11 to 19 years of experience was $300 to $375 per hour, the range for attorneys with 8 to 10 years of experience was $275 to $350, and the range for attorneys with 4 to 7 years of experience was $225 to $300.  <u>Id.</u>

[14] In the billing records, Mr. Quackenbos appears as AJQ, Mr. Wright appears as BFW, and Ms. Pelletier appears as DTP.

[15] The Cost of Living Calculator, at <u>http://www.bankrate.com/calculators/savings/moving-cost-of-living-calculator.aspx</u> (last visited May 16, 2016).

pay system.[16]  Accordingly, for the same reasons discussed above for the Andry Law Group, the undersigned references <u>Mooney</u> to determine reasonable local rates for the Domengeaux Wright attorneys.  In 2014, Mr. Quackenbos had 6 years of experience and Mr. Wright had 57 years of experience.[17]  Like the Andry Law Group, it appears that this is Mr. Quackenbos' and Mr. Wright's first case in the Vaccine Program, and it is difficult to determine their reputation and skill level as compared to other practitioners in the Program, but counsel did obtain a successful resolution for petitioners in this case.

As discussed for Mr. Andry, an upward adjustment from the <u>Mooney</u> rates is appropriate to reflect the fact that Mr. Wright had 57 years of legal experience in 2014, as opposed to the 15 years of counsel in <u>Mooney</u>.  Mr. Wright had significantly more than 20 years of experience for the duration of his work on this case from 2011 to 2015.  Although Mr. Wright has more overall legal experience than Mr. Andry, he and Mr. Andry have the same vaccine litigation experience, and the undersigned finds it appropriate to award them the same increase of $50 per hour from <u>Mooney</u> rates.  **Accordingly, the undersigned finds that $325 per hour is a reasonable rate for Mr. Wright's work in this case.**

A downward adjustment is warranted for Mr. Quackenbos, who had only 6 years of legal experience in 2014.  Mr. Quackenbos performed work on this case from 2013 to 2016.  In 2013, he had 5 years of experience, in 2015, he had 7 years of experience, and in 2016 he had 8 years of experience.  Thus, from 2013 to 2015 he had the same level of experience while performing work on this case as Ms. Cumberland, and the undersigned finds it appropriate to award them the same decrease from <u>Mooney</u> rates for those years.  In 2016, he had 8 years of experience.  In <u>McCulloch</u>, all other factors being equal, an appropriate rate for an attorney with 8 to 10 years of experience was $50 higher than an attorney with 4 to 7 years of experience.  <u>See</u> 2015 WL 5634323, at *19.[18]  **A reasonable rate for Mr. Quackenbos' work from 2013 to 2015 is $200 per hour.  A reasonable rate for Mr. Quackenbos' work in 2016 is $250 per hour.[19]**  This represents a $50 increase from Mr. Quackenbos' 2013 to 2015 rate to account for his greater experience.  **Ms. Pelletier's requested rate of $100 per hour is reasonable.**

---

[16] <u>See</u> General Schedule Classification and Pay, at https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/; 2016 General Schedule (GS) Locality Pay Tables, at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2016/general-schedule/.

[17] Mr. Quackenbos was admitted to the Louisiana State Bar in 2008 and Mr. Wright was admitted in 1957.  Pet'rs' App., Ex. 2 at 1-2; <u>See also</u> Louisiana State Bar Association Membership Directory, https://www.lsba.org/public/membershipdirectory.aspx (last visited May 19, 2015).

[18] In <u>McCulloch</u>, the rate range for attorneys with more than 20 years of experience was $350 to $425.  2015 WL 5634323, at *19.  The range for attorneys with 11 to 19 years of experience was $300 to $375 per hour, and the range for attorneys with 4 to 7 years of experience was $225 to $300.  <u>Id.</u>

[19] Mr. Quackenbos billed for 183.20 hours of work on this case, 10.20 of which were in 2016. <u>See generally</u>, Pet'rs' App., Ex. 2B; Pet'rs' Supp. App., Ex. A.

### C.  Hourly Rates: Nixon & Light

Petitioners request $1,480.00 in attorneys' fees for Nixon & Light.  Pet'rs' App. at 2.
One attorney from Nixon & Light, John B. Buzbee, performed work on this case.  Pet'rs' App.,
Ex. 3.  Mr. Buzbee represented petitioners in the probate action seeking to have them appointed
co-guardians of H.T.R.'s estate for purposes of receiving her vaccine award.  Id. at 1.  His time is
billed at a rate of $200 per hour.  Id.

Nixon & Light is located in Little Rock, Arkansas.  Mr. Buzbee states that $200 per hour
is his standard hourly rate, and is a slight reduction from the rate of $225 per hour he charges in
certain complex bankruptcy matters.  Pet'rs' App., Ex. 3 at 1.  He avers that based on discussions
with clients, other attorneys in the Little Rock area, and his general familiarity with the legal
profession, $200 per hour is commensurate with the customary rate charged in the locality for
similar services, if not less.  Id.

Mr. Buzbee has been licensed to practice law since April 2008.  Pet'rs' App., Ex. 3 at 1.
He performed work on this case during 2015, at which time he had 7 years of experience.  Id. at
4.  **The undersigned finds Mr. Buzbee's requested rate of $200 per hour reasonable.**

### ii.  Hours Expended

The undersigned finds a reduction in the number of hours billed appropriate for several
reasons.  First, petitioners' counsel requests compensation for paralegal work at an attorney rate
and also requests compensation for administrative work.  Second, counsel billed for time spent
seeking admission to the United States Court of Federal Claims bar and for time spent
familiarizing themselves with the Vaccine Program generally.  Third, counsel billed for time
spent researching a pharmaceutical claim.  Fourth, counsel billed for time spent travelling at their
full hourly rate.

The billing records submitted contain numerous entries that constitute block billing,
where counsel has billed for many tasks all in a single entry.  Many of the blocks contain time
that is not compensable for one of the above-listed reasons alongside time that is compensable.
For such entries, it is not possible to determine what precise portion of the time billed should be
compensated.  The billing entries identified and reduced below represent billing entries that
consist wholly or primarily of non-compensable time.  Accordingly, and because it is counsel's
burden to document the fees claimed, the undersigned will not compensate the time billed for the
entire billing entry.  See Rodriguez, 2009 WL 2568468, at *8.  The undersigned notes that these
reductions are also offset by the fact that many other entries, though comprised primarily of
*compensable* time, also include some non-compensable time that has not been identified for
reduction because of the impossibility of breaking down the billing record item-by-item.

### A.  Administrative and Paralegal Work

It is well established that billing for clerical and other secretarial work is not permitted in
the Vaccine Program.  See, e.g. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (legal
assistant services that were "primarily of a secretarial and clerical nature . . . should be

considered as normal overhead office costs included with the attorneys' fee rates"). Clerical and secretarial work includes tasks such as making travel arrangements, setting up meetings, and reviewing invoices. See Mostovoy v. Sec'y of Health & Human Servs., No. 02-10V, 2016 WL 720969, at \*5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Attorneys may be compensated for paralegal-level work, but at a rate that is comparable to what would be paid for a paralegal. Doe/11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at \*9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing Missouri v. Jenkins, 491 U.S. 274, 288 (1989)). "It is the nature of the work, not the title or education of the person performing it, that determines whether it is legal, paralegal, or secretarial/clerical in nature." Id. Paralegal tasks include preparing and filing exhibits and exhibit lists, and assembling trial notebooks. Mostovoy, 2016 WL 720969, at \*5.

### 1. Andry Law Group—Administrative Time

The following billing entries are administrative in nature, and will not be compensated. On June 17, 2011, Ms. Cumberland billed .20 hours to receive a phone message from Heather Raymo requesting a meeting. Pet'rs' App., Ex. 1A, at 8. On July 26, 2011, she billed .30 hours for correspondence with an accountant regarding payment of an invoice. Id. at 9. Mr. Andry billed .10 hours to review her correspondence on the issue. Id. On August 24, 2011, Ms. Cumberland billed .20 hours to set up a meeting with co-counsel. Id. Mr. Andry billed .20 hours to confirm the meeting. Id.

On March 13, 2012, Ms. Cumberland billed 1.5 hours for correspondence with co-counsel and petitioners' expert, Dr. Barnes, regarding approving Dr. Barnes' fee schedule and mailing materials to him. Pet'rs' App., Ex. 1A, at 21. On the same day, Mr. Andry billed a total of .60 hours for emails regarding Dr. Barnes' payment. Id. On March 16, 2012, Ms. Cumberland billed .30 hours to receive notice of a status conference scheduling. Id. On March 23, 2012, she billed .50 hours for discussions with co-counsel and Dr. Barnes regarding their availability for the Rule 5 status conference. Id. at 22. On June 8, 2012, she billed .10 hours to "[r]eceive time sheets from Bob Wright's office for entry." Id. at 27. On July 8, 2012, Ms. Lobrano billed .10 hours to receive correspondence from Dr. Becker requesting to schedule a phone call with Mr. Andry. Id. at 28. Between July 9 and 16, 2012, Ms. Cumberland billed a total of 2.90 hours primarily for scheduling phone conferences and reviewing Dr. Becker's invoice. Id. at 29. Mr. Andry billed a total of 1 hour on July 9 and 10, 2012, for correspondence with respondent's counsel about scheduling a conference. Id.

On September 10, 2012, Mr. Andry billed 8 hours for "[t]rial prep (started organizing exhibit binders for trial); started looking into flights and hotel arrangements." Pet'rs' App., Ex. 1A, at 32. It is not clear how much time was spent looking into travel arrangements versus doing trial prep. Accordingly, half of this time will not be compensated. On September 25, 2012, Ms. Lobrano billed .40 hours to speak with the special master's law clerk regarding securing the courtroom and court reporter for hearing. Id. at 32. Ms. Cumberland billed .50 hours on the same day for various tasks related to coordinating the hearing and hearing travel. Id. at 33. On October 16, 2012, Ms. Cumberland billed .30 hours for correspondence regarding scheduling a conference call, and billed .10 hours on October 17, 2012, for the same. Id. at 33. Between

October 18 and 26, 2012, Ms. Cumberland billed a total of 6.50 hours for tasks related to the arranging the logistics of the hearing, including making travel arrangements, scheduling meetings, and reserving conference rooms. Id. at 34-35. Ms. Lobrano billed a total of 11.30 hours during this same period for similar tasks, and Mr. Andry billed a total of 1.20 hours for the same. Id. On November 13, 2012, Ms. Cumberland billed .30 for receiving a phone call from petitioners' expert, Dr. Kinsbourne, regarding his payment and emailing Mr. Andry regarding the request. Id. at 37. On November 16, 2012, she billed .30 hours for correspondence regarding scheduling a status conference. Id. On November 19, 2012, she billed 1 hour for various tasks, including coordinating payment of Dr. Kinsbourne and contacting the court to find out if bench books are required. Id. at 38. On November 20, 2012, she billed .10 hours for receiving confirmation that Dr. Kinsbourne was paid. Id. On November 21, 2012, she billed .10 hours to request that Ms. Lobrano set up a shuttle to and from the hotel. Id. Ms. Lobrano billed .50 hours for setting up the shuttle. Id. Ms. Lobrano billed 1.50 hours on November 26, 2012, to call the experts to make sure they had everything needed for their arrival to Little Rock. Id. at 39. On December 4, 2012, Ms. Cumberland billed .90 hours to receive and review Dr. Kinsbourne's invoice and submit it for payment, and to review an article. Id. at 40. On December 5, 2012, she billed 1.25 hours to draft a letter excusing H.T.R. for missing school the day of the hearing. Id. at 41. On December 18, 2012, she billed .10 hours for reviewing communication from Ms. Pelletier regarding Dr. Kinsbourne's invoice.

On May 14, 2013, Ms. Cumberland billed 2.50 hours for scheduling a status conference and drafting a memorandum on how long a special master has to rule after completion of an entitlement hearing.[20] Pet'rs' App., Ex. 1A, at 46. Mr. Andry billed 1.50 hours for reviewing the memorandum and responding to the status conference scheduling request. Id. Ms. Cumberland billed 2.50 hours on May 15, 2013, for essentially the same tasks. Id.

Between April 20, 2014, and September 25, 2014, Mr. Andry billed a total of 10.45 hours for various communications and coordination of dates for the life care planner visits. Pet'rs' App., Ex. 1A, at 49-51. On October 16, 17, and 20, he billed .50, .20, and .30, respectively, for emails regarding scheduling a status conference. Id. at 52. **Accordingly, Mr. Andry's time will be reduced by 20.05 hours, and Ms. Cumberland's time will be reduced by 22.45 hours. Ms. Lobrano's time will be reduced by 13.80 hours.**

## 2.  Andry Law Group—Paralegal Time

The following billing entries are paralegal in nature and are compensable at a paralegal rate. On September 6, 2011, Ms. Cumberland billed 6 hours to receive, review, and prepare medical records for filing. Pet'rs' App., Ex. 1A, at 10. She billed 1.90 hours on September 14, 2011, to put together and mail the records to the expert, and another .10 hours on September 15 to receive notification that they were received. Id. On October 14, 2011, she billed 8 hours to put together and file copies of exhibit books. Id. at 12. On November 4, 2011, she billed 5.6 hours to prepare exhibits and attempt to file them, along with drafting a motion to substitute records, memorandum in support, and proposed order. Id. at 13. On the same day, she billed an

---

[20] The first part of this time is not compensable as it is administrative, and the second is not compensable as time spent familiarizing learning about the Vaccine Program generally.

additional 1.80 hours to prepare and file the exhibits on CD.  Id. at 14.  On December 13, 2011, Ms. Cumberland billed 5 hours for various tasks related to filing exhibits, including preparing a table of contents, filing a notice of filing, and drafting and filing a motion to strike exhibits filed previously.  Id. at 18.  On December 20, 2011, she billed .50 hours for filing medical records.  Id.

On January 13, 2012, Ms. Cumberland billed 4 hours for tasks related to filing medical records.  Pet'rs' App., Ex. 1A, at 18.  On January 19, 2012, she billed 1.50 hours for filing additional copies of exhibits previously filed on CD, as well as receiving a request from respondent's counsel for certain medical records.  Id. at 19.  On April 30, 2012, Mr. Andry billed 1.50 hours for working with Ms. Cumberland and Ms. Lobrano to coordinate exhibits for filing.  Id. at 26.  On May 1, 2012, Ms. Cumberland billed 2.50 hours for tasks related to the re-filing of exhibits.  Id. at 26.  Ms. Cumberland billed 1.50 hours on July 10, 2012, for filing medical records.  Id. at 29.  She billed .50 hours on July 18, 2012, for correspondence regarding availability of counsel and experts for a hearing.  Id. at 30.  Mr. Andry billed .50 hours for the same.  Id.  Between July 20 and 22, 2012, Ms. Cumberland billed an additional total of 1.30 hours for correspondence regarding scheduling the hearing.  Id. at 30-31.  On September 10, 2012, Mr. Andry billed 8 hours for "[t]rial prep (started organizing exhibit binders for trial); started looking into flights and hotel arrangements."  Id. at 32.  Half of this time, representing the time spent organizing exhibit binders for trial, will be compensated at a paralegal rate.  Ms. Cumberland billed .80 and .50 hours on September 11, 2012, for filing documents.  Id. **Accordingly, 6 hours of Mr. Andry's time will be compensated at a paralegal rate of $100 per hour, and 41.50 hours of Ms. Cumberland's time will be compensated at a paralegal rate of $100 per hour.**

### 3.  Domengeaux Wright—Administrative Time

The following billing entries are administrative in nature and are not compensable.  On October 17, 2011, Mr. Wright billed .20 hours for "[r]eview of examples of time records in accordance with timekeeping requirements for this case. . ."  Pet'rs' App., Ex. 2A, at 3.  On January 3, 2012, Ms. Pelletier billed 1 hour to open an electronic and physical file for the case.  Id. at 4.  On February 29, 2012, she billed .25 hours to print and organize the initial scheduling order for Mr. Wright's review.  Id. at 5.  On May 11, 2012, Mr. Wright billed .20 hours to review notice from co-counsel regarding likely dates for the entitlement hearing.  Id. at 7.  On July 5, 2012, he billed .10 hours to review confirmation of meeting with petitioners' experts.  Id.  Between July 19 and November 23, 2012, he billed a total of 2.10 hours for various emails to scheduling meetings and make logistical arrangements for the hearing in Little Rock, Arkansas.  See id. at 8-9.  Ms. Pelletier billed .25 on September 6, 2012, to fax materials to Mr. Wright.  Id. at 8.  On December 5, 2012, Mr. Wright billed .20 hours to review an email regarding the need for a letter to excuse H.T.R. from school for attendance at the hearing.  Id. at 10.

Mr. Wright billed a total of 1.50 hours on May 14 and 15, 2013, for tasks related to setting up a status conference.  Pet'rs' App., Ex. 2A, at 11.  On November 12 and 13, 2013, he billed a total of .40 hours for setting up another status conference.  Id. at 13.  On December 2, 2013, he billed .20 hours for an email to life care planner Dr. Gorman requesting a phone call.  Id. at 14.  On December 5 and 6, 2013, he billed a total of 1.10 hours for emailing the life care

planners for information needed to generate retainer fee checks, sending W-9 forms, and reviewing their fee schedules.  Id. at 15.

On January 6, 2014, Mr. Wright billed .20 hours for an email to set up a conference call. Pet'rs' App., Ex. 2A, at 17.  On January 7 and 8, 2014, Mr. Quackenbos billed a total of .70 hours for phone calls related to scheduling Dr. Gorman's trip to Arkansas.  Id.  He billed .20 hours for the same on February 17, 2014.  Id. at 18.  Mr. Wright billed .20 hours on February 13, 2014, for review of travel arrangements for the trip.  Id.  Between April 14, 2014, and August 27, 2014, he billed 1.20 hours for communications with co-counsel regarding scheduling dates for respondent's life care planner visit.  Id. at 20-22.  Mr. Quackenbos billed .40 hours for the same. Id. at 21.  **Accordingly, Mr. Wright's time will be reduced by 7.60 hours.  Mr. Quackenbos' time will be reduced by 1.30 hours,[21] and Ms. Pelletier's time will be reduced by 1.50 hours.**

### 4.  Domengeaux Wright—Paralegal Time

The following billing entries are paralegal in nature and are therefore compensable at a paralegal rate.  On September 6, 2012, Mr. Wright billed .20 hours to review an email from Ms. Cumberland regarding preparations for the hearing, including updating of exhibits and pleadings binders, and making arrangements with the court.  Id. at 8.  On December 4, 2013, he billed .20 hours for review of an email requesting a copy of the petition and forwarding of the same to co-counsel for their handling.  Id. at 14.  **Accordingly, .40 hours of Mr. Wright's time will be compensated at a paralegal rate of $100 per hour.**

### B.  Admission to the Bar

Fees and costs related to counsel's admission to the United States Court of Federal Claims Bar are not compensable.  See, e.g. Oswalt v. Sec'y of Health & Human Servs., No. 03-2153, 2011 WL 2149932 (Fed. Cl. Spec. Mstr. May 2, 2011)(denying fees for time spent preparing application for admission to the bar of the U.S. Court of Federal Claims); Ceballos v. Sec'y of Health & Human Servs., No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)(the admission fee for the U.S. Court of Federal Claims bar is not recoverable); Velting v. Sec'y of Health & Human Servs., No. 90-1432V, 1996 WL 937626 (Fed. Cl. Spec. Mstr. Sept. 24, 1996)(denying compensation for hours spent obtaining admission to the bar, even where admission was sought specifically for that case and counsel was unlikely to again utilize the admission).

The following time is not compensable.  Mr. Andry and Ms. Lobrano billed for time spent seeking Mr. Andry's admission to the United States Court of Federal Claims bar.  Between April 6, 2011, and June 14, 2011, Ms. Lobrano billed 4 hours related to this and Mr. Andry billed 1 hour.  Pet'rs' App., Ex. 1A at 3.  Over the span of the next several months, Ms. Lobrano billed a total of 6.06 hours for tasks relating to seeking Mr. Andry's admission.  Id. at 5-7.  Mr. Andry billed a total of 1.10 hours for the same.  Id.  The tasks billed for include receiving and reviewing his certificate of good standing from the Louisiana Supreme Court, requesting sworn statements

---

[21] All reductions to Mr. Quackenbos' time in this Decision are for hours billed from 2013 to 2015, and his fees are therefore adjusted based on a rate of $200 per hour.

on his behalf, and receiving notification of his admission.  See id.  In addition, on October 14, 2011, Ms. Lobrano billed 1 hour to "[p]ull for J. Andry all the materials he needs to review in order to take the test for the electronic filing system in order to get a log in," and Mr. Andry billed 1.50 hours for reviewing those materials.  Id. at 12.  **Mr. Andry's time will be reduced by 3.60, and Ms. Lobrano's time will be reduced by 11.06 hours.**

## C.  Travel

It is well established that travel time is compensated at 50 percent of counsel's hourly rate when the attorney is not performing work while traveling.  See, e.g. Rodriguez, 2009 WL 2568468, at *21; Carter v. Sec'y of Health & Human Servs., No. 04-1500V, 2007 WL 2241877 (Fed. Cl. Spec. Mstr. July 13, 2007); Scoutto v. Sec'y of Health & Human Servs., No. 90-3576V, 1997 WL 588954 (Fed. Cl. Spec. Mstr. Sept. 5, 1997).  The following time will be compensated at a 50 percent rate, as there is no indication that counsel performed any case work during the travel time billed.

### 1.  Andry Law Group

On November 26, 2012, Ms. Cumberland and Mr. Andry each billed 2.60 hours of time to "[f]ly to Little Rock, Arkansas."  Pet'rs' App., Ex. 1A at 39.  Ms. Cumberland billed 4.30 hours on November 27, 2012, to "draft notes regarding hearing for the file; then fly back to New Orleans."  Id. at 39.  Given that Ms. Cumberland billed 2.60 hours to fly to Little Rock on November 26, 2.60 of the 4.30 hours billed on November 27, 2012, will be compensated at 50 percent of the normal rate.  **Accordingly, 2.60 hours of Mr. Andry's time will be compensated at 50 percent rate, and 5.20 hours of Ms. Cumberland's time will be compensated at 50 percent rate.**

### 2.  Domengeaux Wright

On November 25, 2012, Mr. Wright billed 5 hours for "[t]ravel to Little Rock to prepare for and attend hearing . . ." and he billed another 5 hours on November 28, 2012, for the return trip.  Pet'rs' App., Ex. 2A at 9-10.  On February 21, 2014, Mr. Quackenbos billed 9 hours for several tasks, including traveling to and from Little Rock, Arkansas, and Austin, Arkansas, and attending the life care planning meeting.  Pet'rs' App., Ex. 2 at 18.  It is not possible to tell from the billing entry what portion of this time was spent actually travelling.  On September 28, 2014, Mr. Quackenbos billed 8.10 hours for "[t]ravel to Little Rock" and "correspondence with Ms. Gangi regarding flight delays."  Id. at 23.  On September 30, 2014, he billed 9 hours for several tasks, including travel from Little Rock to New Orleans, and several teleconferences.  Id. at 23-24.  Again, it is not possible from the billing record to determine the time spent travelling, as opposed to performing other work.  All three of Mr. Quackenbos' travel billing entries contain more than just travel, and one apparently included a flight delay.  Thus, it is not possible to estimate the time spent actually travelling, and the entirety of these billing entries will be compensated at 50 percent rate.  **26.10 hours of Mr. Quackenbos' time will be compensated at 50 percent rate, and 10 hours of Mr. Wright's time will be compensated at 50 percent rate.**

### 3.  Nixon & Light

Mr. Buzbee billed .60 hours on November 2, 2015, for "[t]ravel to Lonoke for hearing" and .60 hours for the return trip to Little Rock. Pet'rs' App., Ex. 3 at 4.  **1.20 hours of Mr. Buzbee's time will be compensated at 50 percent rate.**

### D.  Pharmaceutical Claim and Familiarization with Vaccine Program Generally

The Vaccine Act limits the recovery of "reasonable attorneys' fees, and other costs" to those "incurred in any proceeding" on a vaccine petition.  42 U.S.C. § 300aa–15(e)(1)(A)–(B). Research conducted to explore petitioner's civil remedies is not a task related to the proceedings on a vaccine claim.  See Krause v. Sec'y of Health & Human Servs., No. 01-93V, 2012 WL 4477431 (Fed. Cl. Spec. Mstr. June 20, 2012).[22]

In addition, time spent learning about the Vaccine Program is not compensable.  See, e.g. Matthews v. Sec'y of Health & Human Servs., No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016); Calise v. Secretary of Health & Human Servs., No. 08–865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011) (reducing petitioner's counsel's billings for "research into the elementary principles of vaccine litigation," noting, "basic education [is] not compensable under the Program."); Carter, 2007 WL 2241877 ("an inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar.  If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task.").

### 1.  Andry Law Group

The following time, billed for research and other tasks related to looking at H.T.R.'s civil remedies outside the Vaccine Program, is not compensable.  On February 22 and 28, 2011, Mr. Andry billed a total of 3.70 hours for reading the Vaccine Act and Bruesewitz v. Wyeth, LLC,[23] and emailing co-counsel regarding parents' right of action to pursue a claim for loss of consortium.  Pet'rs' App., Ex. 1A, at 1.  On April 11, 2011, Ms. Cumberland billed 3.20 hours for receiving correspondence from co-counsel requesting information on "Hymel v. Merck," and researching the same.  Id. at 4-5.  Mr. Andry billed 1 hour for the same.  Id. at 5.  He also billed

---

[22] The undersigned notes that petitioners, represented by Mr. Andry and other counsel, filed a civil action on December 9, 2013, *while* their vaccine case was pending.  See Raymo et al v. Merck Sharp & Dohme Corp. et al, No. 4:13CV00697, filed 12/9/2013, administratively terminated 3/31/2014; See Order, filed March 31, 2014, available at http://scholar.google.com/scholar_case?case=13854853254812153157&hl=en&as_sdt=6&as_vis=1&oi=scholarr.

[23] Bruesewitz v. Wyeth, LLC, 562 U.S. 223 (2011) (holding that the National Childhood Vaccine Injury Act preempts all design-defect claims against vaccine manufacturers brought by plaintiffs who seek compensation for injury or death caused by vaccine side effects).

1.50 hours for drafting a memorandum to Mr. Wright regarding determining "whether the claim should be filed in Arkansas or elsewhere." Id. at 5.

On November 24, 2012, Ms. Cumberland billed .10 hours to review research results from Mr. Andry about possible loss of consortium claim in Arkansas. Pet'rs' App., Ex. 1A, at 38. On June 18, 2015, Mr. Andry billed .50 hours for emails regarding the status of the case and the "status of suit against Merck." Id. at 54.

The following hours, billed by counsel for time spent researching and familiarizing themselves with the Vaccine Program generally, is not compensable. On April 3 and 4, 2011, Ms. Cumberland billed a total of 9.30 hours to review the Guidelines for Practice Under the National Vaccine Injury Compensation Program, rules of the Court of Federal Claims, the Act, and the Vaccine Injury Table, and to write memoranda regarding the same. Pet'rs' App., Ex. 1A at 2. Mr. Andry billed 5.30 hours on April 3, 2011, for "[r]eview of procedure under National Vaccine Injury Compensation [Program] and review[] [of] cases based on elemental proof required for causation and appropriate standard." Id. Between April 4 and April 7, 2011, Mr. Andry billed an additional 14.80 hours on tasks related to reviewing the timeline for a Vaccine Act case, and researching, discussing, and drafting memoranda on vaccine act procedures and the burden of proof in vaccine cases. Id. at 2-3. During the same period, Ms. Cumberland billed 3 hours for drafting a memorandum on the "Matrix of Proof and need for attached documentation" and discussing the timeline for Vaccine Act Case with Mr. Andry. Id. at 2. On June 15, 2011, Ms. Cumberland billed 3.20 hours to "[c]ontinue review of opinions of entitlement from the Court of Federal Claims to make sure [she] include[d] all pertinent information in the petition, affidavits and exhibits." Id. at 8. On November 3, 2011, she billed 2.40 hours to review a "timeline memorandum regarding scheduling of a vaccine court per regulations." Id. at 13.

On May 14, 2013, Ms. Cumberland billed 2.50 hours to review and draft a memorandum regarding how long the special master has to rule after completion of an entitlement hearing under the vaccine rules, in addition to corresponding with a law clerk regarding scheduling a status conference. Pet'rs' App., Ex. 1A, at 46. Mr. Andry billed 1.50 hours to review the memorandum and respond to the law clerk. Id. **Mr. Andry's hours will be reduced by 28.30. Ms. Cumberland's hours will be reduced by 23.70.**

### 2. Domengeaux Wright

The following time, billed for research and other tasks related to H.T.R.'s civil remedies outside the Vaccine Program, is not compensable. On February 28, 2011, Mr. Wright billed .20 hours for review and analysis of parents' right of action to pursue a claim for loss of consortium. Pet'rs' App., Ex. 2A, at 1. He billed .30 hours on February 23, 2012, for the same. Id. at 5. On April 11, 2011, he billed .50 hours for numerous tasks regarding venue issues such as "[m]emorandum. . . to determine whether the claim should be filed in Arkansas or elsewhere," along with medical record collecting. Id. at 2. It is not possible from the billing record to determine how much time was spent on medical record collecting versus investigating venue for a civil claim.

The following time, billed for time spent researching and learning about the Vaccine Program generally, is not compensable. On September 25, 2013, Mr. Quackenbos billed 3.30 hours to "[r]esearch jurisprudence regarding vaccine act and rights of litigants in the event of an adverse decision" and to write a memorandum regarding the same. Pet'rs' App., Ex. 2A, at 12. On December 16, 2013, he billed 2.60 hours to "[a]nalyze and review jurisprudence re: awards of compensation in vaccine courts." Id. at 15. The same day, Mr. Wright billed 1 hour for "[r]eview and analysis of Statute regarding damages for pain & [s]uffering (42. U.S.C. Sec. 300aa-15(a)(4) and two opinions regarding life care planning and past expenses issue." Id. at 16. Mr. Wright billed 1.50 hours on March 10, 2014, for review of the same statute (42 U.S.C. § 300aa-15) and discussion of it with Mr. Quackenbos, and an additional .30 hours on December 23, 2014, for review and analysis of the statute. Id. at 19, 27. **Mr. Wright's hours will be reduced by 3.80. Mr. Quackenbos' hours will be reduced by 5.90.**

### E.  Excessive and Duplicative Billing

Work on this case was performed during overlapping time periods by four attorneys and two paralegals, in addition to a nurse consultant who provided services similar to that of attorneys working on the case. See generally, Pet. App., Ex. 1B at 8-61; Pet. App., Ex. 2B at 6-39, 118, 124, 175-78.[24] The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on the same case. See Sabella, 86 Fed. Cl. at 214-15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin v. Sec'y of Health & Human Servs., No. 10-36V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys at Conway, Homer & Chin-Caplan billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health & Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health & Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client). In this case, excessive and duplicative billing throughout the litigation warrants overall reductions in the attorneys' fees requested by both the Andry Law Group and Domengeaux Wright.

### 1.  Andry Law Group

The Andry Law Group worked on this case from November 2010 to December 2015. See Pet'rs' App., Ex. 1A. Mr. Andry performed work during that entire duration, and Ms. Cumberland performed work from April 2011 to November 2013. See id. Between February 2011 and May 2013, the firm's billing record contains a significant number of entries that are duplicative, excessive, or both.

---

[24] Exhibits 1B and 2B are not independently paginated. Citations to Exhibits 1Band 2B refer to the pdf page number generated by CM/ECF.

Several tasks were billed more than once by the same attorney.  For example, on April 4, 2011, Mr. Andry billed 4.20 hours to draft a memorandum regarding the information and documents needed to file a claim with the United States Court of Federal Claims.  Pet'rs' App., Ex. 1A, at 3.  This identical billing entry appears twice on the same day.  Id.  On November 4, 2011, Ms. Cumberland billed 1.70 hours for "[m]eeting with J. Andry to prepare for status conference; attend telephone status conference and take notes; organize notes of J. Andry and my own and type memo regarding conference for file."  Id. at 13.  That same day she also billed 1.30 hours for "[m]eeting with [Mr. Andry] re: Initial Status Conference and listened to conference and took notes; assisted [Mr. Andry]."  Id.  On August 24, 2012, Ms. Lobrano, the firm's paralegal, billed .50 hours twice to meet with Ms. Cumberland regarding bench books and tasks for trial.  Id. at 31.

Many tasks were performed and billed for by both Mr. Andry and Ms. Cumberland.  Indeed, when both attorneys worked on the file on a given day, the majority of billing entries appear to be duplicative in some way.[25]  For example, as noted above, Mr. Andry billed 4.20 hours twice on April 4, 2011, to draft a memorandum regarding the information and documents needed to file a claim with the United States Court of Federal Claims.  Ms. Cumberland then also billed 3.50 hours for drafting a memorandum regarding the documents required to file a claim with the United States Court of Federal Claims on April 8, 2011.  Pet'r's App., Ex. 1A, at 4.  On May 24, 2011, both attorneys billed time to review medical records from the same hospital.  Id. at 7.  On May 26, 2011, Ms. Cumberland billed 2.50 hours to review the matters in the United States Court of Federal Claims involving transverse myelitis.  Id.  Mr. Andry billed 3 hours for the same.  Id.  On April 27, 2012, both attorneys billed for a variety of tasks, including correspondence with Dr. Barnes and Dr. Becker and reviewing the addendum to Dr. Becker's

---

[25] In addition to the examples provided, the attorneys billed for performing duplicative work on the following dates: 5/27/11 (review of cases); 8/25/11 (meeting with Mr. Wright); 9/28/11: (edit petition and review Dr. Kinsbourne expert report); 10/21/11 (add MCP and legal secretary to email list for notices from the court and research Special Master Vowell); 12/4/11 (phone conference with Dr. Kinsbourne, working with each other on file); 12/6/11 (review records from Arkansas Childen's Hospital); 12/13/11(update and review of case memorandum); 12/15/11 (receive notice of Order granting Motion to Strike); 1/18/12 (meeting with Mr. Wright); 3/8/12 (conference call with Dr. Kinsbourne); 3/12/12 (review of Dr. Kinsbourne/Dr. Barnes correspondence/theory); 3/28/12 (prepare for and discuss Rule 5 status conference); 4/24/12 (review of medical literature); 6/7/12, 6/12/12, and 6/13/12 (receive and review 240 day notice, review cases about opting out, and discuss plan); 7/2/12 (receive and review Dr. Gill and Dr. Sladky expert reports); 7/3/12 (review Dr. Kinsbourne's correspondence and review Dr. Sladky reports); 7/5/12 (review, compare, and discuss all expert reports); 7/17/12 (review and discuss letter from Dr. Becker); 9/28/12 (receive and review pre-hearing order; meet); 10/24/12 (work on Matrix of Proof; meet); 11/12/12 (review of article from Ms. Harrison); 11/23/12 (compile medical literature and memos); 11/26/12 (meet with experts and BW); 11/28/12 (receive notice of minute entry); 12/8/12 (receive/review email from Dr. Becker); 1/4/13 (receipt and review of transcript; discussions); 2/5/13 (review and finalize post-trial brief); 2/8/13 (review respondent's status report); 5/3/13 (draft reply brief).  See generally, Pet'rs' App., Ex. 1A.

report.  Id. at 25-26.  This entry is particularly striking as it is word-for-word the same for both attorneys, despite the number and variety of tasks performed.[26]  On August 14, 2012, Ms. Cumberland billed .40 hours to receive and review notification of a status conference minute entry.  Id. at 31.  Mr. Andry billed .10 for the same.  Id.

There are many entries for intraoffice communications, discussions, and meetings between Mr. Andry and Ms. Cumberland, for which both attorneys billed.[27]  On June 15, 2011, Mr. Andry and Ms. Cumberland each billed over 1 hour for a conversation about the need to hire a neurologist for an expert opinion.  Pet'r's App., Ex. 1A, at 8.  On November 3, 2011, they each billed .80 hours for a phone conference with each other to prepare for a status conference.  Id. at 13.  The next day they each billed additional time to meet with each other in preparation for the conference and attend the conference.  Id.  On December 9, 2011, they both billed for discussions regarding the status of medical records and Dr. Kinsbourne's expert report.  Id. at 17.  This billing for intraoffice communications is in addition to time billed for interoffice communications between the Andry Law Group and Domengeaux Wright.

Some entries, while not duplicative, are excessive in the amount of time billed.[28]  For example, on June 17, 20, and 21, 2011, Ms. Cumberland billed 5.30, 7.80, and 9.50 hours, respectively, for drafting a memorandum of the case.  Pet'r's App., Ex. 1A, at 8.  On November 3, 2011, Ms. Cumberland billed 2.40 hours to "[r]eview timeline memorandum regarding scheduling of a vaccine court per regulations."  Id. at 13.  The same day Mr. Andry billed 2.40

---

[26] The entries read, in full:  "Correspondence with Dr. Barnes requesting he review Dr. Becker's report and request his availability for weeks in September and October; correspondence with Dr. Becker regarding his availability for weeks in September and October; request CV from Dr. Barnes; request copies of reference materials from Dr. Becker; request Dr. Becker address the IOM 2012 as Special Master Vowell will likely be interested; receive/review addendum to Dr. Becker's report; send second invoice for payment; send to Dr. Barned a W9 for him to complete and request an invoice from Dr. Barnes."  Pet'rs' App., Ex. 1A, at 26.

[27] In addition to the examples provided, intraoffice communications, discussions, and meetings also occurred on the following dates: 4/4/11; 4/6/11; 4/7/11; 4/8/11; 4/11/11; 4/20/11; 5/9/11; 5/25/11; 9/9/11; 9/14/11 ; 10/3/11; 11/3/11; 12/5/11; 12/16/11; 1/19/12; 1/23/12; 2/1/12; 3/19/12; 3/23/12; 3/29/12; 3/30/12; 4/9/12; 4/11/12; 4/12/12; 4/19/12; 4/26/12; 5/1/12; 5/2/12; 7/11/12; 7/13/12; 7/16/12; 7/18/12; 7/19/12; 7/23/12: ; 8/12/12; 9/6/12; 10/9/12; 11/1/12; 11/2/12; 11/6/12; 11/7/12; 12/4/12; 1/31/13; 2/4/13; 2/6/13; 2/14/13; 2/23/13; 2/27/13; 3/1/13; 5/1/13; 5/2/13; 5/10/13; 5/15/13; 5/17/13.  See generally, Pet'rs' App., Ex. 1A.

[28] On October 5, 2011, Mr. Andry billed 7.20 hours on "review of Exhibits Books completed by MP; review of records approximately 1500 pages o[f] exhibits, etc. for insertion into exhibit books."  Pet'rs' App., Ex. 1A, at 12.  On October 6, 2011, Ms. Cumberland and Mr. Andry each billed 4.30 hours to work with on trial preparation, when the hearing was not held for another year.  Id.  On December 7, 2011, Ms. Cumberland billed a total of 10.50 hours and Mr. Andry billed a total of 11.75 hours to review medical literature from Dr. Kinsbourne and for discussions among themselves.  Id. at 16-17.

hours to "[r]eview expert report and all exhibits," and 2 hours to "[r]eview updated memorandum of the case, exhibits and expert reports." Id.

Finally, there appear to be some erroneous billing entries, such as on November 22, 2013, when Ms. Cumberland billed 4.50 hours for trial preparation tasks when the hearing had already occurred. Pet'r's App., Ex. 1A, at 48.

The undersigned finds that Andry Law Group's billing in this case so excessive and duplicative as to warrant a reduction of their overall fees by 40%.

## 2. Domengeaux Wright

Domengeaux Wright worked on this case from January 2011 to December 2015. See Pet'rs' Ex. 2A. Mr. Wright performed work from January 2011 to July 2015, and Mr. Quackenbos performed work from September 2013 to December 2015. See id. The firm's billing record contains many entries that are duplicative of work performed by the Andry Law Group throughout the course of the firm's work on the case.

The firm billed for excessive interoffice communications, discussions, and meetings between attorneys at Domengeaux Wright and the Andry Law Group, much of which was billed by attorneys at both firms.[29] For example, on March 17, 2011, Mr. Andry and Mr. Wright both billed for a phone conference to discuss strategy. Pet'rs' App., Ex. 2A, at 1; Pet'rs' App., Ex. 1A, at 1. On March 21, 2011, Mr. Andry billed for emailing a memo to Mr. Wright and Mr. Wright billed for review of the memo. Id. On September 29, 2011, Mr. Wright and Ms. Cumberland both billed for a phone call between them. Id. at Pet'rs' App., Ex. 2A, at 3;Pet'rs' App., Ex. 1A, at 11. Mr. Wright also billed duplcatively for review of work performed by the Andry Law Group. On December 12, 2011, he billed to review Ms. Cumberland's emails with Dr. Kinsbourne and respondent's counsel. Pet'rs' App., Ex. 2A, at 4. On April 30, 2012, he billed to review Ms. Cumberland's drafts of documents and exhibits for filing. Id. at 6.

In addition, there is excessive billing for intrafirm communications, discussions, and review of work between Mr. Wright and Mr. Quackenbos.[30] On November 14, 2013, Mr. Wright and Mr. Quackenbos billed for several phone conferences with each other and Mr. Quackenbos billed for preparing a memorandum for Mr. Wright. Pet'rs' App., Ex. 2A, at 13-14.

---

[29] In addition to the examples provided, interoffice communications, discussions, and meetings also occurred on the following dates: 4/11/11; 6/20/11; 8/25/11; 9/19/11; 10/3/11; 10/7/11; 11/4/11; 11/14/11; 1/23/12; 2/1/12; 2/6/12; 2/27/12; 2/29/12; 3/8/12; 3/13/12; 3/19/12; 3/23/12; 3/28/12; 5/1/12; 5/10/12; 5/11/12; 6/12/12; 7/3/12; 7/5/12; 7/18/12; 9/5/12; 9/6/12; 10/18/12; 10/19/12; 10/29/12; 11/1/12; 11/2/12; 5/1/13; 5/15/13; 11/14/13; 2/19/14; 3/6/14; 4/14/14; 11/10/14; 1/28/15; 6/18/15. See generally, Pet'rs' App., Ex. 2A.

[30] In addition to the examples provided, intraoffice communication and review was billed on the following dates: 5/22/13; 2/19/14; 2/24/14; 2/28/14; 11/21/14; 12/1/14; 12/9/14; 2/12/15; 6/12/15; 6/23/15; 7/15/15.

On November 12, 2014, Mr. Wright billed for review of email exchanges between Mr. Quackenbos and Mr. Andry.  Id. at 25.  On February 10, 2015, Mr. Wright billed for review of emails from Mr. Quackenbos to Ms. Gangi.  Id. at 27.  On March 9, 2015, Mr. Wright and Mr. Quackenbos both billed for discussions between themselves.  Id. at 28-29.

In some instances, attorneys from Domengeaux Wright billed for work that was also performed by the Andry Law Group.[31]  On May 9 and 10, 2011, Mr. Wright and Mr. Andry both billed for review of medical records from the Children's Hospital in Arkansas.  Pet'rs' App., Ex. 2A, at 2; Pet'rs' App., Ex. 1A, at 6.  On December 7, 2012, Mr. Andry and Mr. Wright both billed for emailing Dr. Becker to request a copy of the same report.  Pet'rs' App., Ex. 2A, at 10; Pet'rs' App., Ex. 1A, at 17.  On May 2, 2013, Mr. Wright, Mr. Andry, and Ms. Cumberland all billed time related to the review of Dr. Sladky's probation matter, the timeline of his suspensions, and discussions thereof.  Id. Pet'rs' App., Ex. 2A, at 11; Pet'rs App., Ex. 1A, at 31.

The undersigned finds the excessive and duplicative billing by Domengeaux Wright warrants a 20% reduction in their overall fees.

### b.  Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  Petitioners request $53,020.41 in attorneys' costs for the Andry Law Group, $142,539.09 in attorneys' costs for Domengeaux Wright, and $165.00 in attorneys' costs for Nixon & Light, for a total cost request of $195,724.50.  Pet'rs' App. at 3.  For the reasons set forth below, the undersigned awards petitioners $85,450.96 in attorneys' costs.

### i.  Experts

#### A.  Dr. Marcel Kinsbourne

Petitioners request a total of $31,915.00 in expert fees for Dr. Kinsbourne.  The Andry Law Group paid $16,957.50 of this total, and Domengeaux Wright paid $14,957.50.  Pet'rs' App., Ex. 1B at 63-62 (expense nos. 4, 18, 19); Pet'rs' App., Ex. 2B at 40 (expense no. 10).  The request is supported by invoices from Dr. Kinsbourne that detail the hours expended, hourly rate charged, and services performed.  See Pet'rs' App., Ex. 1B at 122-23, 128; Pet'rs' App., Ex. 2B at 132, 134-35.  Dr. Kinsbourne prepared expert reports in this case and testified at the hearing.

---

[31] In addition to the examples provided, work was performed duplicatively on the following dates: 2/4/13 and 2/5/13 (Ms. Cumberland, Mr. Andry and Mr. Wright all billed for reviewing/editing post-hearing brief); 2/22/13 (three attorneys billed review respondent's post hearing brief); 5/16/13 (Mr. Andry and Ms. Cumberland billed for attending status conference; Mr. Wright billed for review of notes from status conference); 2/24/14 (Mr. Quackenbos and Mr. Andry billed for review of decision); 5/26/15 (Mr. Wright, Mr. Quackenbos, and Mr. Andry all billed to review wage loss analysis from respondent).  See generally, Pet'rs' App., Ex. 1A; Pet'rs' App., Ex. 2A.

He performed work on the case in 2011 and 2012. Dr. Kinsbourne billed most of his time at a rate of $500 per hour, with the exception of travel time, which he billed at $250 per hour, and 6 emails that he billed at $300 per hour.[32] See Pet'rs' App., Ex. 2B, at 132-35.

Although Dr. Kinsbourne has previously been awarded an hourly rate of $500 in other Program cases, the undersigned finds the requested hourly rate of $500 per hour excessive in this case. See, e.g. Simon v. Sec'y of Health & Human Servs., No. 05-941V, 2008 WL 623833, at *6 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (Dr. Kinsbourne awarded $500 per hour); Adams v. Sec'y of Health & Human Servs., No. 01–267V, 2008 WL 2221852, at *2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008) (following Simon, 2008 WL 623833). The award of $500 per hour to Dr. Kinsbourne was unusual, and in other cases he has been awarded less. See, e.g., Bhuiyan v. Sec'y of Health & Human Servs., No. 05-1269V, 2015 WL 2174208, at *4 (Fed. Cl. Spec. Mstr. Apr. 16, 2015) (Dr. Kinsbourne awarded $400 per hour); Faoro v. Sec'y of Health & Human Servs., No. 10-704V, 2014 WL 5654330, at *4 (Fed. Cl. Spec. Mstr. Oct. 15, 2014) (Dr. Kinsbourne awarded $400 per hour); Stone v. Sec'y of Health & Human Servs., No. 09–1041, 2010 WL 3790297, at *6-7 (Fed.Cl.Spec.Mstr. Sept. 9, 2010) (Dr. Kinsbourne awarded $300 per hour); Hammitt v. Sec'y of Health & Human Servs., No. 07–170V, 2011 WL 1827221, at *7 (Fed.Cl.Spec.Mstr. Apr. 7, 2011) (Dr. Kinsbourne awarded $300 per hour).

In Simon, Dr. Kinsbourne had significant experience testifying in cases concerning similar alleged injuries (encephalopathy and seizures). 2008 WL 623833, at *7. The special master concluded that Dr. Kinsbourne had utilized his expertise effectively to "minimize the number of hours that otherwise would be necessary" for an expert to expend. Id. The special master found that Dr. Kinsbourne deserved an hourly rate of $500 in appropriate circumstances where the imputed efficiency of time use was borne out by the number of hours billed and where he was "credible and provided very good expert services." Id.

In this case, the record does not indicate that an hourly rate of $500 is justified by Dr. Kinsbourne's knowledge and efficiency. In her Ruling on Entitlement, then-Chief Special Master Vowell noted that Dr. Kinsbourne was "not an ideal expert witness," because among other reasons, he "does not treat transverse myelopathies, let alone teach, research, or write about them." Raymo, 2014 WL 1092274, at *18. Dr. Kinsbourne billed 68.20 hours in this case, whereas he billed only 31.75 hours in Simon. Compare Pet'rs' App., Ex. 2B, at 132-35 with 2008 WL 623833, at *8. The undersigned finds that a reasonable hourly rate for Dr. Kinsbourne in this case is $400.

Dr. Kinsbourne expended 68.20 hours on this case, 15.50 of which were for travel. Pet'rs' App., Ex. 2B, at 132-35. For the same reasons discussed above with regard to counsel's hours, travel will be compensated at 50% rate. Rodriguez, 2009 WL 2568468, at *21. Dr. Kinsbourne's invoice also includes $190.00 for "Cabs and Airline fees," which appear to have been for travel to and from the hearing, but for which no receipts were provided. Pet'rs' App.,

---

[32] Dr. Kinsbourne billed .60 hours for "Emails (6)" in July 2012 at a rate of $300 per hour. Pet'rs' App., Ex. 2B, at 134. The total dollar amount billed for these emails is $1,800.00. This appears to be an error, as .60 hours at a rate of $300 per hour comes to $180.00. In addition, the undersigned notes that other emails were billed at a rate of $500 per hour. See id.

Ex. 2B, at 132.  **Accordingly, the undersigned will award a total of $24,180.00 in expert fees for Dr. Kinsbourne.**[33]  This amount represents 52.70 hours compensated at $400 per hour, and 15.50 hours of travel compensated at $200 per hour.  The undocumented $190.00 for cabs and airlines will not be compensated.

## B.  Dr. Daniel Becker

Petitioners request a total of $39,245.00 in expert fees for Dr. Becker.  The Andry Law Group paid $24,190.00 of this total, and Domengeaux Wright paid $15,055.00.  Pet'rs' App., Ex. 1B, at 63-64 (expenses nos. 11-13, 20); Pet'rs' App., Ex. 2B, at 40 (expense no. 3).  This request is supported in part by invoices submitted from Dr. Becker, but the invoices do not provide detailed information about the services performed.  Dr. Becker billed $5,400.00 for 360 minutes of "Chart review and report preparation" on April 26, 2012.  Pet'rs' App., Ex. 1B, at 96.  On April 27, 2012, he billed $270.00 for an 18 minute call and $675.00 for 45 minutes of "Literature review and report preparation."  Id. at 100.  For the hearing in November 2012, he billed $10,000.00 per day for three days of court appearance, and $110.00 in travel expenses.  Id. at 133.  Petitioner's application also indicates that the Andry Law Group paid him $2,790.00 for "Amended Report, phone conf.," but no billing record from Dr. Becker was submitted with regard to this amount.  See id. at 103-04.  Thus, it can be calculated that Dr. Becker billed most of his time at a rate of $900 per hour or above.[34]

As an initial matter, Dr. Becker's hourly rate is clearly excessive.  The highest hourly rate that the undersigned has awarded to *any* expert in the Program is $500 per hour.  For the reasons set forth below, however, the undersigned finds that Dr. Becker's time spent in this matter should not be compensated at all.  Dr. Becker's opinion was not relied on by then-Chief Special Master Vowell in her Ruling on Entitlement, as she found preponderant evidence that Dr. Becker plagiarized his report from a report authored by a different expert and filed in another Vaccine Act case.  Raymo, 2014 WL 1092274, at *13.  When she asked questions about how Dr. Becker's report was prepared, then-Chief Special Master Vowell "assess[ed] his credibility as so severely compromised as to preclude reliance on his opinion and testimony."  Id.  Although

---

[33] The $24,180.00 awarded constitutes a reduction of $7,735.00 from the requested $31,915.00 in expert fees for Dr. Kinsbourne.  From the invoices submitted, it is not possible to determine how this reduction should be allocated between the Andry Law Group and Domengeaux Wright.  Accordingly, the reduction will be allocated in proportion to the share of Dr. Kinsbourne's bill that each firm advanced.  The Andry Law Group paid $16,957.50—53.13% of Dr. Kinsbourne's total fees.  Therefore, the Andry Law Group's requested costs will be reduced by $4,109.61, which is 53.13% of $7,735.00.  Thus, the Andry Law Group will be awarded $12,847.89 of Dr. Kinsbourne's costs.  Domengeaux Wright's requested costs will be reduced by $3,625.39, and they will be awarded $11,332.11 of Dr. Kinsbourne's costs.

[34] The undersigned also notes that the hearing in this case lasted only two days, but Dr. Becker billed for three days of court appearance.  See Pet'rs' App., Ex. 1B, at 133.  Presumably, the third day was actually spent travelling, and should only have been billed at 50 percent rate to begin with.

petitioners did not directly address respondent's allegations of plagiarism by Dr. Becker, "in their posthearing brief, filed after respondent brought her concerns to the court's attention, petitioners abandoned the . . . causation theory Dr. Becker proposed." Id. at *14.[35]

Dr. Becker's billing records are not sufficiently specific to allow a determination of the reasonableness of the time he expended and the tasks he performed, and no billing record at all was submitted for $2,790.00 of his fees.  The issue of his plagiarism makes it even more important than in the usual case that his billing record provide support for the work he

---

[35] The Ruling on Entitlement reads, in pertinent part:

> There is preponderant evidence that Dr. Becker plagiarized his expert report from one authored by Dr. Douglas Kerr and filed in another Vaccine Act case.  When asked questions about how his report was prepared, Dr. Becker's answers were deliberately misleading.  When an expert witness attempts to mislead the court on an issue as fundamental as the origin of his expert opinion, I assess his credibility as so severely compromised as to preclude reliance upon his opinion and testimony.  Raymo, 2014 WL 1092274, at *13.
>
> . . .
>
> I have compared Dr. Becker's report with the portions of Dr. Kerr's report quoted in Flores, and the portions quoted are virtually identical.  See Flores, 2013 WL 5587390, at *6 n.11, *12 n.16, *14 n.19.
>
> It is clear that Dr. Becker presented the work product of Dr. Kerr as his own.  It does not appear that he disclosed this fact to petitioners or their attorney, at least before the issue was raised at hearing.  It is this failure that I find the most concerning in deciding whether to credit any part of his testimony.  Had Dr. Becker indicated that he had been provided a copy of Dr. Kerr's earlier report and agreed with the reasoning and conclusions therein and adopted them as his own, my concerns about his candor would be less pressing.  However, whether for financial reasons, time constraints, or for the prestige attached to being an expert witness, Dr. Becker was willing to take a shortcut, pass another's work product off as his own and, more significantly, testify in a manner that attempted to mislead the court about the origin of the opinions expressed in the report bearing his signature.

Id. at *14 (internal footnote omitted).

performed, particularly in preparation of his expert report.  **For these reasons, Dr. Becker's bill for preparation of an expert report and expert testimony will not be compensated.[36]**

### ii.   Other Consultants

### A.  Life Care Planners

Petitioners request $24,850.00 for Cornelius Gorman, PhD, and $4,822.52 for Shelly Savant, MD.  Pet'rs' App., Ex. 2B at 40 (expense nos. 7, 11).[37]  These costs were paid by Domengeaux Wright.  Petitioners filed several billing statements in support of these costs.  Id. at 112-15; 138-39, 147, 149.  However, the billing statements do not detail the hours expended, rates charged, or provide more than a general statement of the work performed.  Dr. Gorman's statements include the following entries: $4,500.00 for "Home Visit-Arkansas," $17,000.00 for "Life Care Plan," and $850.00 for "Attorney Conference."  Id. at 112, 115.  Dr. Savant's statements include the following entries:  $1,500.00 for "Neurological/Psychiatric LCP Evaluation," $1,000.00 for "Neurological/Psychiatric Report Writing/Research," $1,000.00 for "Chart Review," $500.00 for "Consultation w Dr. Gorman," $1,750.00 for "Travel (Distant)," $775.00 for "Consultation w/Dr Gorman re:LCP," $775.00 for "Research," and $22.52 in interest.[38]  Id. at 138-39, 149.

The billing records submitted do not indicate the hourly rate charged for each service, although Dr. Savant and Dr. Gorman both submitted fee schedules, which provide their hourly rates in general.  See Pet'rs' App., Ex. 2B at 106-07, 109-10.  Dr. Gorman charges $825 per hour for report preparation, life care planning consultations, and out of town travel.  Id. at 109.  Dr. Savant charges $750 per hour for neurological/psychiatric evaluation and neurological/ psychiatric evaluation report writing/research, $500 per hour for chart reviews and life care planning consultations, and $250 per hour for out of town travel.  Id. at 106.  From the statements submitted, it is possible to guess how much time was expended on most of the general services by matching the fee schedule rate to the service, but it is not possible to tell what type of tasks went into the performance of each service.  For example, $17,000.00 for "Life Care Plan," is not sufficiently detailed to allow a determination of whether the amount of time expended on the life care plan was reasonable.  In addition, the life care plans were not filed in this case, so it is not possible to review the work product itself.  The most it is possible to determine, based on a

---

[36] Other costs related to Dr. Becker, such as his airfare for the hearing, will be compensated. These costs are requested elsewhere in petitioners' application.  See, e.g. Pet. App., Ex. 1B, at 109 (receipt for airfare for Dr. Becker).  While Dr. Becker's invoice indicates additional "travel expenses" of $110.00, no receipts were submitted to substantiate these costs, and they will not be compensated.  Id. at 133.

[37] In petitioners' application, $2,500.00 paid to Ms. Savant was submitted as part of Dr. Gorman's fees.  This error does not affect te total requested for their combined services.  See Pet'rs' App., Ex. 2B at 105.

[38] Interest was billed elsewhere by Drs. Savant and Gorman, but was subsequently subtracted out of the bill, so is not discussed.  This $22.52 in interest was not subtracted out.

joint status report filed December 12, 2014, is that respondent received petitioners' life care plan on December 11, 2014, and the parties ultimately agreed to settlement terms.

Petitioners have a clear obligation to monitor expert fees. Rodriguez, 2009 WL 2568468 at *22 (citing Perreira v. Sec'y of Health & Human Servs., 1992 WL 164436, at *10 (Fed. Cl. Spec. Mstr. Jun. 12, 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994)). The Guidelines for Practice state that petitioner should explain costs "sufficiently to demonstrate their relation to the prosecution of the petition." Id. (citing Guidelines for Practice at 69, Section X, Chapter 3, Part B(2)). Billing time in large blocks prevents a detailed review, and "frustrates the court's ability to assess the reasonableness of the request." Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 424 (2009) (upholding the special master's reduction of costs for expert where expert billed his time in two large blocks)(quoting Broekelschen, 2008 WL 5456319, at *4-5.

Because of the lack of detailed billing information it is impossible to determine the reasonableness of the time expended by the life care planners, or to conclusively determine the rates billed for their services. However, these expert hourly rates set forth in the fee schedules are excessive. As noted above, the most the undersigned has awarded to an expert in the Program, for expert reports, expert testimony, life care planning, or otherwise, is $500 per hour. On review of Ms. Savant and Dr. Gorman's fee schedules, the undersigned finds their fees in general to be excessive based on her experience with life care planners in the Program. **For the reasons discussed above, the costs requested by Domengeaux Wright for Dr. Gorman and Dr. Savant will be reduced by half.**

**Finally, the $22.52 in interest applied by Dr. Savant to her outstanding bill is not compensable.** Jeffries v. Sec'y of Health & Human Servs., No. 99-670V, 2006 WL 3903710 (Fed. Cl. Spec. Mstr. Dec. 15, 2006) (finding that a finance charge applied by experts to a total outstanding bill constituted interest that cannot be assessed against the U.S.).

### B. Economist[39]

Petitioners request $19,892.00 in fees for Malcolm M. Dienes, LLC, CPA. Pet'rs' App., Ex. 2B, at 40 (expense no. 4). These costs were paid by Domengeaux Wright. A letter of engagement states that Dienes is engaged to assist in "litigation matters," and that their standard hourly rates are $175 to $350, in addition to a $1,950.00 retainer fee. Id. at 74. Petitioners submitted invoices from Dienes, which indicate the number of hours billed and a sufficiently detailed explanation of the services performed, which were related to preparing computations based on the parties' respective life care plans. See id. at 78, 80-81. The invoices provided

---

[39] In her initial decision on attonreys' fees and costs, the undersigned did not compensate petitioners for $14,144.50 of work performed by Dienes, because petitioners did not provide an invoice detailing the work performed. Petitioners filed a motion for reconsideration on August 5, 2016, asking the undersigned to award an additional $14,144.50 for work performed by Dienes and providing a supplemental invoice detailing the work performed. The undersigned granted petitioners' motion for reconsideration on October 26, 2016. She now compensates petitioners in full for the services of Dienes, awarding the requested total of $19,892.00.

support the following: $3,057.00 for 16.50 hours of work performed between February 12 and 23, 2015, and $740.00 for 3 hours of work performed on March 6, 2015. Id. at 74, 78, 80-81. An additional invoice filed with petitioners' motion for reconsideration showed 68.45 hours of work performed, for a total of $14,144.50. Petitioners' Motion for Reconsideration ("Pet'rs' Mot. Rec.") dated Aug. 5, 2016 (ECF No. 113) at 3-5. After careful review of the invoices submitted, the undersigned finds that the work performed, time spent, and rates charged by Malcolm M. Dienes, LLC, is reasonable. **Therefore, the $19,892.00 requested by Domengeaux Wright for Malcolm M. Dienes, LLC, will be reimbursed in full.**

### C. Nurse Consultant

Petitioners request $3,248.25 in costs for Debra Harrison, RN, JD. Pet. App., Ex.2B at 40 (expense no. 8). This cost was paid by Domengeaux Wright. The requested cost includes travel expenses for an initial trip to meet the clients in 2011—$223.25 for a car rental, parking fee, and dinner, for which an invoice and receipts were provided. Id. at 118-20. It also includes an invoice for $2,775.00 in fees for the client interview, which includes a total of 15 hours of travel billed at $75 per hour and a total of 10.75 hours for "Client meeting" billed at approximately[40] $150 per hour. Id. at 124. Although "Client meeting" is not a particularly detailed explanation of the work performed, the undersigned finds the total hours expended and rate charged reasonable. The request also includes $250.00 for "travel expenses – Raymo Hearing," documented only by a check from Domengeaux Wright. Id. at 122. **No invoice or receipts were submitted for this $250.00, and it will not be compensated.**

Petitioners also request an additional $17,435.00 in outstanding costs for Ms. Harrison paid by Domengeaux Wright. Pet. App., Ex.2B at 40 (expense no. 17). This request is supported by a detailed invoice noting the hours billed and the tasks performed, which include research, review of the expert reports, work with the life care planners, and discussions with petitioners regarding H.T.R.'s condition. Id. at 175-78. Upon review of this invoice, it appears that Ms. Harrison billed at $150 per hour, and the undersigned finds the time expended reasonable. Ms. Harrison spent 8 hours travelling to the hearing on November 25, 2012, and 8 hours travelling back from the hearing on November 28, 2012. Id. at 177. **These 16 hours of time will be compensated at 50 percent rate, and the requested costs will be reduced by $1,200.00.**

### iii. Medical Bills

Petitioners request $24.50 for a "Medical Bill—Baptist Health System," and $12.00 for a "Medical Bill—Children's Hospital—x-rays." Pet'rs' App., Ex. 1B, at 64 (expense nos. 22, 23). These costs were paid by the Andry Law Group. No receipts or invoices are provided for these expenses. See id. at 138, 140. The undersigned notes that these expenses appear identical to expenses 3 and 7, for $24.50 and $12.00, respectively, from Baptist Health and Arkansas Children's Hospital. See id. at 63. Expenses 3 and 7 were for copies of medical records, as evidenced by the invoices provided. See 71, 84. Without documentation of expenses 22 and 23,

---

[40] 8.50 hours are billed at $150 per hour and 2.25 hours are billed at $166.67 per hour. Pet'rs' App., Ex. 2B, at 124.

however, it is not possible to confirm that they are for copies of medical records, nor that they are not simply duplicative of the expenses requested as numbers 3 and 7.  **Accordingly, the requested $36.50 will not be compensated.**

### iv.   Travel Expenses

Petitioners request a total of $3,656.50 in "American Express" expenses and $6,367.92 in "Firm Travel," paid by Domengeaux Wright.  Pet'rs' App., Ex. 2B, at 40 (expense nos. 1, 2). These totals mostly encompass reasonable transportation and lodging costs for a trip to meet petitioners at the outset of the case, the hearing in Little Rock, and two site visits for life care planning.  See generally id. at 41-68.  However, the requested costs also include $5,533.42 for a charter flight for Mr. Quackenbos and petitioners' life care planners on February 21, 2014, as well as $617.50 for transportation by Little Rock Limousine on the same day.  Id. at 56-57, 59-60.  **The undersigned finds the requested $5,533.42 and $617.50 excessive and will reduce the request by half.**

### v.   Other Costs

Petitioners request $125.00 for "Am. Medical Association Subscription," paid by the Andry Law Group.  Pet'rs' App., Ex. 1B at 63 (expense no. 1), 66.  A subscription to the American Medical Association represents an overhead expense, and is not a compensable cost. See e.g. Rodriguez, 2009 WL 2568468, at *23 (National Law Journal subscription is an overhead expense, not a compensable cost).  **The requested $125.00 will not be compensated.**

Finally, petitioners request $60.00 for Mr. Andry's certificate of good standing from the Supreme Court of Louisiana.  Pet'rs' App., Ex. 1B, at 64 (expense no. 25).  The admission fee for the U.S. Court of Federal Claims bar is not recoverable.  Ceballos v. Sec'y of Health & Human Servs., No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Ar. 25, 2004).  **The requested $60.00 will not be compensated.**

### vi.   Interest

Petitioners' request includes $29,554.58 in interest on loans taken out jointly by Heather Raymo and Domengeaux Wright to finance the majority of the costs in this case.  Pet. App., Ex. 2B, at 40 (expense no. 16); Pet'rs' App. at 3.  A request for reimbursement of costs must be reasonable, and the special master is afforded wide discretion in determining the reasonableness of costs.  Perreira, 27 Fed. Cl. 29, at 34.  Charging $29,554.58 in interest to the Program is simply not reasonable.  This is particularly the case where, as here, a substantial portion of the underlying costs for which the loans were taken out are themselves unreasonable.  **The $29,554.58 interest on the loans will not be compensated.**

## II.   Conclusion

Upon review of the documentation of the requested attorneys' fees and costs, and based on her experience with the Vaccine Act and its attorneys, the undersigned finds a total of **$368,953.81** in attorneys fees and costs reasonable.  This total represents the following:

**Attorneys' Fees:**

    Total Requested:  $535,526.90
    **Total Awarded:  $269,358.35**

        Andry Law Group:
            Requested: $421,434.40
            **Awarded: $204,568.35**
                (Mr. Andry: $235,851.25)
                (Ms. Cumberland: $104,422.00)
                (Ms. Lobrano: $674.00)
                (40% Reduction: - $136,378.90)

        Domengeaux Wright:
            Requested: $112,612.50
                ($110,062.50 in original application)
                ($2,550.00 in supplemental application)
            **Awarded: $63,430.00**
                (Mr. Wright: $43,947.50)
                (Mr. Quackenbos: $33,100.00)
                (Ms. Pelletier: $2,240.00)
                (20% Reduction: - $15,857.50)

        Nixon & Light:
            Requested: $1,480.00
            **Awarded: $1,360.00**
                (Mr. Buzbee: $1,360.00)

**Costs:**
    Total Requested:  $195,724.50
    **Total Awarded:  $99,595.46**

        Andry Law Group:
            Requested: $53,020.41
                (- $4,109.61 Dr. Kinsbourne)
                (- $24,190.00 Dr. Becker)
                (- $36.50 Medical Bills)
                (- $125.00 American Medical Association)
                (- $60.00 Certificate of Good Standing)
            **Awarded: $24,499.30**

        Domengeaux Wright:
            Requested: $142,539.09
                (- $3,625.39 Dr. Kinsbourne)
                (- $15,055.00 Dr. Becker)

(- $22.50 Dr. Savant Interest on Bill)
 (- $14,825.00 Drs. Savant and Gorman)
(- $250.00 Ms. Harrison)
(- $1,200.00 Ms. Harrison Travel Time)
(- $3,075.46 Charter Jet & Limousine)
(- $29,554.58 Loan Interest)
**Awarded: $74,931.16**[41]

Nixon & Light:
Requested: $165.00
**Awarded: $165.00**

**Total Fees and Costs:**

Requested: $731,251.40
**Awarded:  $368,953.81**

The undersigned awards attorneys' fees and costs as follows:

(1) **A lump sum of $229,067.65 in the form of a check payable jointly to petitioners and the Andry Law Group, LLC, for attorneys' fees and costs.**

(2) **A lump sum of $138,361.16 in the form of a check payable jointly to petitioners and Domengeaux Wright Roy Edwards & Colomb, LLC, for attorneys' fees and costs.**

(3) **A lump sum of $1,525.00 in the form of a check payable jointly to petitioners and Nixon & Light, Attorneys at Law, for attorneys' fees and costs.**

The Clerk of Court SHALL ENTER JUDGMENT forthwith.


**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[41] The undersigned's initial decision awarding attorneys' fees and costs awarded Domengeaux Wright a total of $60,768.66 in costs.  This total included only $5,747.50 of the $19,892.00 requested for the services of Dienes.  The undersigned granted petitioners' motion for reconsideration and now awards petitioners the full $19,892.00.  Thus, $14,144.50 has been added to the original award amount, for a new total of $74,931.16 in costs for Domengeaux Wright.