# In the United States Court of Federal Claims

No. 11-654V

(Filed: December 14, 2016)
(Reissued: December 29, 2016)

| | | |
|---|---|---|
| ************************************* | ) | |
| **KEVIN RAYMO** *and* **HEATHER** | ) | Attorneys' fees and costs in a vaccine |
| **RAYMO,** *legal representatives of a minor* | ) | case; lodestar approach applied to local |
| *child*, **H.T.R.**, | ) | rates for fees in Louisiana and |
| | ) | Arkansas; reduction for attorneys' time |
| **Petitioners,** | ) | spent on paralegal and administrative |
| | ) | tasks; reasonable rates for medical |
| v. | ) | experts; documentation of costs |
| | ) | |
| **SECRETARY OF HEALTH AND** | ) | |
| **HUMAN SERVICES,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| ************************************* | ) | |

Andrew J. Quackenbos, Domengeaux Wright Roy Edwards & Colomb, LLC, Lafayette, Louisiana, for petitioners.

Claudia B. Gangi, Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, C. Salvatore D'Alessio, Acting Director, Catharine E. Reeves, Acting Deputy Director, and Gabrielle M. Fielding, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Judge.

Kevin and Heather Raymo, acting on behalf of their minor child, H.T.R., and through their attorneys, request that this court review the chief special master's decision awarding attorneys' fees and costs. *See* Pet'rs' Mem. of Objs. in Support of Mot. for Review ("Pet'rs' Mem."), ECF No. 125-1. The case was initiated on October 11, 2011, when Kevin and Heather Raymo filed a petition on behalf of H.T.R., alleging that H.T.R. developed transverse myelitis as

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B ("Vaccine Rules"), Rule 18(b), this opinion and order is being initially filed under seal. By rule, the parties have fourteen days in which to propose redactions.

a result of certain vaccines she received. *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, slip op. at 1-2 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) ("*Fees Decision*"). On February 24, 2014, then-Chief Special Master Vowell ruled that petitioners were entitled to compensation for H.T.R.'s injuries. *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2014 WL 1092274 (Fed. Cl. Spec. Mstr. Feb. 24, 2014).

On July 15, 2016, Chief Special Master Dorsey[2] awarded petitioners $354,809.31 in attorneys' fees and costs, which was significantly less than the amount requested by petitioners, $731,251.40. *Fees Decision* at 3. Petitioners filed a motion for reconsideration on August 5, 2016, relating specifically to costs for work performed by petitioners' economist. Pet'rs' Mot. for Recons. Regarding Decision on Att'ys' Fees and Costs ("Pet'rs' Mot. for Recons."), ECF No. 113. Chief Special Master Dorsey granted the motion and awarded petitioners an additional $14,144.50 to reflect the economist's costs. Order Granting Pet'rs' Mot. for Recons. (Oct. 26, 2016), ECF No. 123. As a result, Chief Special Master Dorsey withdrew the decision issued on July 15, 2016 and issued a new decision on November 2, 2016, awarding petitioners $368,953.81 in attorneys' fees and costs. *Fees Decision* at 3. Petitioners filed a motion for review of the chief special master's decision regarding attorneys' fees and costs on November 10, 2016, which is now pending before this court.[3] For the reasons stated, the court denies petitioners' motion for review and affirms the chief special master's decision on attorneys' fees and costs.

## BACKGROUND

Petitioners, Kevin and Heather Raymo, are the legal representatives of their minor daughter, H.T.R. *Fees Decision* at 1. Petitioners allege that H.T.R. developed transverse myelitis due to her receipt in October 2010 of vaccinations for human papillomavirus virus, meningococcus, hepatitis A, diphtheria, tetanus and pertussis. *Raymo*, 2014 WL 1092274, at *1. H.T.R. was eleven years old at the time of the vaccinations. *Id.* at *2. As a result, H.T.R. is completely paralyzed from the waist down. *Id.* at *2, *5.

*A. Procedural History*

---

[2]The case was reassigned from former Chief Special Master Vowell to Chief Special Master Dorsey on September 15, 2015. Notice of Reassignment, ECF No. 98.

[3]Petitioners had filed a motion for review of the chief special master's initial decision on August 15, 2016. *See* Pet'rs' Mot. for Review of Decision on Att'ys' Fees and Costs, ECF No. 114. That motion for review was filed before the chief special master resolved the motion for reconsideration. After the court remanded the case to the chief special master for action on the request for reconsideration and the chief special master granted relief, petitioners filed the motion for review that is now before this court.

Petitioners filed this suit on October 11, 2011, pursuant to the National Vaccine Injury Compensation Program. *Fees Decision* at 1.[4] Then-Chief Special Master Vowell held an entitlement hearing in November 2012, and determined that petitioners were entitled to compensation on February 24, 2014. *Raymo*, 2014 WL 1092274, at *5, *23. Respondent ("government") did not concede that the vaccines caused H.T.R.'s injuries, but did agree to compensate petitioners. *See* Stipulation (Nov. 5, 2015), ECF No. 100. Chief Special Master Dorsey accepted the stipulation and awarded compensation accordingly. *See* Decision on Joint Stipulation (Nov. 5, 2015), ECF No. 101.

On March 4, 2016, petitioners requested $532,976.90 in attorneys' fees and $195,724.50 in costs, for a total of $728,701.40. Pet'rs' Mot. for Fees and Costs (Mar. 4, 2016), ECF No. 107.[5] The government responded that a reasonable fees and costs award "would fall between $97,000.00 to $120,000.00." Resp't's Resp. to Pet'rs' Appl. for Att'ys' Fees and Costs at 3 (March 15, 2016), ECF No. 108. Petitioners subsequently requested an additional $2,550.00 to account for attorneys' fees accumulated in 2016. Pet'rs' Suppl. Mot. for Fees and Costs (May 17, 2016), ECF No. 110. On July 15, 2016, Chief Special Master Dorsey awarded petitioners $354,809.31 in attorneys' fees and costs. *Fees Decision* at 3. Petitioners filed a motion for reconsideration on August 5, 2016, Pet'rs' Mot. for Recons., and a motion for review on August 15, 2016, Pet'rs' Mot. for Review of Decision on Att'ys' Fees and Costs, ECF No. 114. The motion was fully briefed and a hearing was held on September 30, 2016.

On October 6, 2016, the court remanded the case to Chief Special Master Dorsey for the limited purpose of ruling on petitioners' motion for reconsideration. *See* Order of October 6, 2016, ECF No. 119. Petitioners' motion for reconsideration related solely to the costs for petitioners' economist, Malcolm M. Dienes, LLC. *See* Pet'rs' Mot. for Recons. Chief Special Master Dorsey granted the motion, which resulted in petitioners receiving an additional $14,144.50 in costs for Dienes, LLC. *See* Order Granting Pet'rs' Mot. for Recons. Chief Special Master Dorsey issued a new decision on November 2, 2016 that awarded petitioners $368,953.81, comprised of $269,358.35 in attorneys' fees and $99,595.46 in costs. *Fees Decision* at 32-33. Petitioners filed a motion for review of that decision on November 10, 2016. Pet'rs' Mem. The government filed its response to petitioners' motion for review on December 8, 2016. Resp't's Resp. to Mot. for Review ("Resp't's Opp'n"), ECF No. 126.

### B. *Chief Special Master's Decision on Attorneys' Fees and Costs*

*1. Attorneys' hourly rates.*

The chief special master relied upon the lodestar approach to determine reasonable attorneys' fees. *Fees Decision* at 5 (citing *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d

---

[4]The program was instituted by and under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-1 to 300aa-34) ("Vaccine Act" or "Act").

[5]Petitioners put forward a request for $531,661.90, but, as the chief special master correctly noted, the requested attorneys' fees in fact totaled $532,976.90. *Fees Decision* at 2 n.4.

3

1343, 1349 (Fed. Cir. 2008)). Under the lodestar approach, the court or special master begins by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Next, the court or special master "may then make an upward or downward departure to the fee award based on other specific findings." *Id.* at 1348. Here, the chief special master applied local Louisiana and Arkansas billing rates, rather than Washington, D.C. forum rates, to determine the attorneys' reasonable hourly rates. *Fees Decision* at 6-7. Though the forum rate typically controls, in this instance the chief special master applied local rates under the so-called *Davis County* exception because nearly all of the legal work occurred in Louisiana and Arkansas, and the chief special master found a "very significant" difference between local and forum rates. *Id.* (applying *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). To determine reasonable local attorneys' rates in Louisiana, the chief special master looked to *Mooney v. Sec'y of Health & Human Servs.*, No. 05-266V, 2014 WL 7715158 (Fed. Cl. Spec. Mstr. Dec. 29, 2014), a vaccine case awarding hourly attorneys' rates in Louisiana,[6] as fitted into the framework of *McCulloch v. Sec'y of Health and Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). *Fees Decision* at 8-10.[7]

Three law firms participated in the case, Andry Law Group, Domengeaux Wright, and Nixon & Light. *Fees Decision* at 6. Petitioners requested attorneys' fees for a total of five attorneys, as well as fees for two paralegals. *Id.* at 6-12.[8] Because both Andry Law Group and Domengeaux Wright were located in Louisiana and performed almost all of the legal work for this case in Louisiana, the chief special master applied *Mooney* and *McCulloch* to determine reasonable hourly rates in Louisiana. *Id.* at 7-11.[9] As a starting point, the chief special master noted that in *Mooney* an attorney with fifteen years of legal experience was awarded an hourly

---

[6]The chief special master commented that "[a]s opposed to [petitioners' cited case of *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007)], *Mooney* dealt with local rates specifically for *vaccine litigation*, and was a 2014, rather than 2007, decision. The undersigned finds the rates in *Mooney* are a more useful reference point than the rates stated in *Turner*. . . ." *Fees Decision* at 8 (emphasis in original).

[7]*McCulloch* set forth a framework by which attorneys' hourly rates were determined by years of legal experience. 2015 WL 5634323, at *19; *Fees Decision* at 9-10. The "experience categories" consisted of attorneys with less than four years, four to seven years, eight to ten years, eleven to nineteen years, and more than twenty years of experience. *Fees Decision* at 9 n.11 (citing *McCulloch*, 2015 WL 5634323, at *19).

[8]The chief special master allowed hourly rates of $100 for both paralegals, as requested. *Fees Decision* at 10, 11.

[9]The chief special master applied the *McCulloch* framework to determine reasonable hourly rates in Arkansas, where John B. Buzbee of Nixon & Light was located. *Fees Decision* at 12. The chief special master allowed a $200 hourly rate for Mr. Buzbee, as requested. *Id.*

4

rate of $275 for vaccine work performed in Louisiana. *Id.* at 8 (citing *Mooney*, 2014 WL 7715158, at *9). Under the *McCulloch* framework, hourly rates were then adjusted upward or downward for the attorneys in this case based upon years of legal experience. *Id.* at 9-10 (citing *McCulloch*, 2015 WL 5634323, at *19).

Using this framework, the chief special master allowed a $325 hourly rate for attorney Jonathan B. Andry and a $200 hourly rate for attorney Michelle Purchner Cumberland of Andry Law Group. *Fees Decision* at 10.[10] She allowed a $200 hourly rate for attorney Andrew J. Quackenbos of Domengeaux Wright for his work between 2013 and 2015, and a $250 hourly rate for his work in 2016 to reflect his increased experience. *Id.* at 11.[11] The chief special master allowed a $325 rate for attorney Bob F. Wright of Domengeaux Wright, rather than the $425 hourly rate requested. *Id.* at 10-11. Because Mr. Wright had fifty-seven years of legal experience, he fell within the highest *McCulloch* bracket and therefore warranted an increased hourly rate compared to the $275 awarded in *Mooney* for an attorney with fifteen years of legal experience. *Id.* at 8, 11. However, the chief special master determined that a $50 rate increase was appropriate, as opposed to anything more, because the case "appear[ed]" to be Mr. Wright's first in the Vaccine Program, and because it was "difficult to determine [Mr. Wright's] reputation and skill level as compared to other petitioners in the [Vaccine] Program." *Id.* at 11.

   *2. Reduction of attorneys' hours requested.*

In addition to establishing reasonable hourly rates, the chief special master also reduced the number of hours requested by the attorneys.

First, the chief special master did not allow attorneys' fees for administrative work. *Fees Decision* at 12-13 (citing *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989); *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016)). In reviewing the requested hours for petitioners' attorneys, the chief special master found numerous instances of administrative work. For example, Mr. Andry of Andry Law Group billed an hour "for correspondence with respondent's counsel about scheduling a conference," and Ms. Cumberland and Ms. Lobrano of Andry Law Group repeatedly billed for tasks related to scheduling or coordinating travel. *Id.* at 13-14. Additionally, the chief special master found that Mr. Wright, Mr. Quackenbos, and Ms. Pelletier of Domengeaux Wright billed for tasks such as reviewing a letter to excuse H.T.R. from school, scheduling a status conference, and scheduling trips. *Id.* at 15-16. Accordingly, the chief special master reduced Mr. Andry's time by 20.05 hours, Ms. Cumberland's time by 22.45 hours, and Ms. Lobrano's time by 13.80 hours. *Id.* at 14. The chief special master also reduced Mr. Wright's time by 7.60 hours, Mr. Quackenbos' time by 1.30 hours, and Ms. Pelletier's time by 1.50 hours. *Id.* at 16.

---

[10]Mr. Andry and Ms. Cumberland requested $350 and $250 hourly rates, respectively. *Fees Decision* at 7.

[11]Mr. Quackenbos requested a $250 hourly rate for all of his time spent on the case. *Fees Decision* at 10.

5

Second, the chief special master allowed attorneys' fees for paralegal-level work, but only at a paralegal rate. *Fees Decision* at 13 (citing *Doe ex rel. Estate of Doe v. Sec'y of Health and Human Servs.*, No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (in turn citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989))). For example, she found that Mr. Andry and Ms. Cumberland of Andry Law Group billed for time spent filing medical records and exhibits, as well as organizing binders. *Id.* at 14-15. Mr. Wright of Domengeaux Wright billed for time spent reviewing an e-mail from Andry Law Group regarding preparations and arrangements with the court for an upcoming hearing, as well as reviewing and forwarding an e-mail to co-counsel. *Id.* at 16. Accordingly, the chief special master only allowed a $100 paralegal hourly rate for 6 hours expended by Mr. Andry, 41.50 hours by Ms. Cumberland, and 0.40 hours by Mr. Wright. *Id.* at 15-16.

Third, the chief special master did not allow attorneys' fees related to admission to the United States Court of Federal Claims Bar. *Fees Decision* at 16 (citing *Estate of Oswalt v. Sec'y of Health & Human Servs.*, No. 03-2153V, 2011 WL 2149932 (Fed. Cl. Spec. Mstr. May 2, 2011); *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004); *Velting v. Sec'y of Health & Human Servs.*, No. 90-1432V, 1996 WL 937626 (Fed. Cl. Spec. Mstr. Sept. 24, 1996)). As a result, the chief special master reduced Mr. Andry's time by 3.60 hours, and Ms. Lobrano's time by 11.06 hours. *Id.* at 17.

Fourth, for time spent traveling, the chief special master reduced petitioners' attorneys' hourly rates by 50 percent. *Fees Decision* at 17 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. July 27, 2009), *review denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011); *Carter v. Sec'y of Health & Human Servs.*, No. 04-1500V, 2007 WL 2241877 (Fed. Cl. Spec. Mstr. July 13, 2007); *Scoutto v. Sec'y of Health & Human Servs.*, No. 90-3576V, 1997 WL 588954 (Fed. Cl. Spec. Mstr. Sept. 5, 1997)). Because petitioners' attorneys gave "no indication" that they performed legal work while traveling, the chief special master reduced the attorneys' requested fees during travel by 50 percent. *Id.*

Finally, the chief special master did not allow attorneys' fees for time spent researching civil remedies, *Fees Decision* at 18 (citing 42 U.S.C. § 300aa-15(e)(1)(A), (B); *Krause v. Sec'y of Health & Human Servs.*, No. 01-93V, 2012 WL 4477431 (Fed. Cl. Spec. Mstr. June 20, 2012)), or time spent learning fundamental legal concepts about the Vaccine Program, *id.* (citing *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016); *Calise v. Sec'y of Health & Human Servs.,* No. 08-865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011); *Carter*, 2007 WL 2241877, at *5). In evaluating the attorneys' fees requested, the chief special master found instances of billing related to civil remedies or fundamental concepts about the Vaccine Program. *Id.* at 18-20. For example, Mr. Andry and Ms. Cumberland of Andry Law Group billed for research related to filing a claim in Arkansas and learning about proper procedure in vaccine petitions. *Id.* at 18-19. Similarly, Mr. Wright and Mr. Quackenbos billed for research related to an Arkansas claim and "jurisprudence regarding [the] [V]accine [A]ct and rights of litigants." *Id.* at 19-20. Accordingly, the chief special master reduced Mr. Andry's time by 28.30 hours, Ms.

6

Cumberland's time by 23.70 hours, Mr. Wright's time by 3.80 hours, and Mr. Quackenbos' time by 5.90 hours. *Id.* at 19-20.

      *3. Reduction of total attorneys' fees requested due to excessive and duplicative billing.*

In addition to reducing the number of billable hours, the chief special master determined that excessive and duplicative billing warranted a 40 percent reduction in fees requested by Andry Law Group, and a 20 percent reduction in fees requested by Domengeaux Wright. *Fees Decision* at 20-24. In explaining her decision, the chief special master noted concerns about billing by Andry Law Group, including: a single attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing for excessive time, and attorneys entering erroneous billing entries. *Id.* at 21-23. The chief special master also noted her view that attorneys with Domengeaux Wright had billed excessively for interoffice communications between Domengeaux Wright and the Andry Law Group, and that the attorneys had billed excessively for intrafirm communications and for work that was also performed by Andry Law Group. *Id.* at 23-24.

    *4. Costs.*

First, in addressing costs, the chief special master only allowed petitioners to recover for costs related to petitioners' expert Dr. Marcel Kinsbourne at $400 per hour, rather than the requested $500 per hour. *Fees Decision* at 24-26.[12] The chief special master noted that Dr. Kinsbourne had received $500 per hour in a few previous vaccine cases, but less than $500 in others. *Compare Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *6-8 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (Dr. Kinsbourne awarded $500 per hour), *with Faoro v. Sec'y of Health & Human Servs.*, No. 10-704V, 2014 WL 5654330, at *3-4 (Fed. Cl. Spec. Mstr. Oct. 15, 2014) (Dr. Kinsbourne awarded $400 per hour). Here, the chief special master found $400 per hour to be reasonable because, unlike in *Simon* where Dr. Kinsbourne had significant experience with the alleged injuries at issue, Dr. Kinsbourne did not have the same level of experience in transverse myelopathies, and former Chief Special Master Vowell found that Dr. Kinsbourne was "not an ideal expert witness." *Fees Decision* at 25; *Raymo*, 2014 WL 1092274, at *18.

Second, the chief special master did not allow petitioners to recover for any costs related to petitioners' expert Dr. Daniel Becker, on the grounds that Dr. Becker's bills were not sufficiently specific, he failed to provide any records for certain fees, he had been found by a preponderance of the evidence to have plagiarized his expert report, and his opinion was not relied upon by the Chief Special Master Vowell in making a determination in the case. *See Fees Decision* at 26-28; *Raymo*, 2014 WL 1092274, at *13-14.

Third, the chief special master reduced the requested costs for petitioners' life care planners by 50 percent. *Fees Decision* at 28-29. The chief special master determined that the billing statements for the life care planners failed to adequately explain the hours spent on the

---

      [12]The chief special master also reduced costs for time spent traveling by 50 percent. *Fees Decision* at 24-25.

7

case, the rate charged, or the work performed. *Id.* at 28. Additionally, the chief special master found the hourly rates requested, which were as high as $825 per hour for one planner and $750 per hour for another, to be excessive. *Id.* at 28-29.

Fourth, the chief special master awarded petitioners $19,892, the full amount requested, in costs for petitioners' economist, Malcolm M. Dienes, LLC. *Fees Decision* at 29-30. The chief special master had initially declined to award $14,144.50 of those costs due to lack of billing documentation, but petitioners later provided sufficient supplemental documentation with their motion for reconsideration, after which the chief special master granted the full amount of the costs sought. Order Granting Pet'rs' Mot. for Recons.

Fifth, the chief special master did not grant $250 in requested costs for a nurse consultant due to lack of documentation, and also reduced the nurse consultant's hourly rate for travel by 50 percent. *Fees Decision* at 30.

Sixth, the chief special master did not allow a requested $36.50 in medical bills due to lack of documentation. *Fees Decision* at 30-31.

Seventh, the chief special master found petitioners' requested travel expenses to be excessive. *Fees Decision* at 31. Specifically, the chief special master reduced petitioners' requested costs for a charter flight and transportation by "Little Rock Limousine" by 50 percent. *Id.*

Eighth, the chief special master did not allow compensation for expenses related to an "Am. Medical Association Subscription" and a certificate of good standing from the Supreme Court of Louisiana. *Fees Decision* at 31 (citing *Rodriguez*, 2009 WL 2568468, at *23; *Ceballos*, 2004 WL 784910).

Finally, the chief special master did not award any of the $29,554.58 petitioners requested for the interest accumulated on loans that Heather Raymo and Domengeaux Wright jointly obtained to finance the case. *Fees Decision* at 31.

### C. Motion for Review

Petitioners' motion for review challenges several of the chief special master's determinations regarding the award of fees and costs. First, petitioners contest the attorneys' fees awarded by the chief special master. Petitioners argue that Mr. Wright should have been compensated at $425 per hour, not $325 per hour, to properly reflect his fifty-seven years of legal experience and reputation in the legal community. Pet'rs' Mem. at 11-12.[13] Additionally, petitioners challenge the chief special master's decision to curtail the attorneys' billable hours as "mechanical and arbitrary." *Id.* at 6-9. Petitioners also seek reversal of the chief special master's decision to reduce Andry Law Group's fees by 40 percent and Domengeaux Wright's

---

[13]Petitioners do not challenge the reduced hourly rates for the other attorneys. Pet'rs' Mem. at 11.

8

fees by 20 percent on the grounds that these "blanket cuts" were arbitrary and unreasonable, arguing that the chief special master improperly inserted her own judgment regarding how the attorneys conducted or should have conducted the litigation. *Id.* at 9-10. Petitioners support this contention by asserting that "in complex matters, the work of multiple attorneys is both reasonable and expected." *Id.* at 9. Second, petitioners challenge the costs awarded by the chief special master. Petitioners argue that the chief special master should have compensated petitioners for costs related to expert Dr. Kinsbourne at $500 per hour, not $400 per hour, and that some compensation should have been awarded for costs related to expert Dr. Becker. *Id.* at 12-15. Petitioners also contest the chief special master's reduction of costs related to the life care planners, reduction of travel expenses, and exclusion of interest accumulated on the money petitioners borrowed to finance the suit. *Id.* at 15-18.

Overall, petitioners argue that Chief Special Master Dorsey should not be afforded the discretion or deference traditionally afforded to a special master in determinations of fees because Chief Special Master Dorsey was not assigned to the case during the proceedings on entitlement and was assigned to preside only after the parties had reached a settlement on compensation. Hr'g Tr. 7:19 to 9:2 (Sept. 30, 2016). The government responds by asserting that the chief special master properly considered all relevant factors in reaching a reasonable attorneys' fees and costs determination, and that the decision should be affirmed. Resp't's Opp'n at 1-2.

## STANDARD OF REVIEW

This court has jurisdiction to review a chief special master's decision under the Vaccine Act and may take one of the following actions upon review of the decision:

> (A) uphold the findings of fact and conclusions of law of the [chief] special master and sustain the [chief] special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the [chief] special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the [chief] special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2); *see Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 91 (2016).

A special master's determinations of law are reviewed *de novo*, findings of fact are reviewed for clear error, and discretionary rulings are reviewed for abuse of discretion. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1354-55 (Fed. Cir. 2011) (citations omitted). The award or denial of attorneys' fees and costs is a discretionary ruling that is reviewed under the abuse of discretion standard. *Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *Graham v. Sec'y of Health & Human Servs.*, 124

9

Fed. Cl. 574, 578 (2015) (citations omitted). This court will only find an abuse of discretion when, as set out by the Federal Circuit in other contexts, the special master's decision "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [his] decision." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 633 (2012) (quoting *Ninestar Tech. Co. v. International Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012)) (alterations in original).

This deferential standard "is not a rubber stamp." *Davis*, 105 Fed. Cl. at 633 (citations omitted). The special master must provide sufficient findings and analysis to ensure that a reviewing court can adequately determine whether an abuse of discretion has occurred. *Caves v. Sec'y of Health & Human Servs.*, 111 Fed. Cl. 774, 779 (2013) (citations omitted). If, however, "the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hall*, 640 F.3d at 1355 (quoting *Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). Additionally, a special master is permitted to rely on his or her own experiences within the Vaccine Program when awarding reasonable attorneys' fees and costs. *Saxton*, 3 F.3d at 1521; *Caves*, 111 Fed. Cl. at 779 (citations omitted).

## ANALYSIS

The Vaccine Act was enacted to implement a "no-fault compensation program" that would "work faster and with greater ease than the civil tort system." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011) (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269 (1995)). The Act prohibits attorneys from charging any fee for services in connection with a vaccine injury petition. *Sebelius v. Cloer*, __U.S. __, __, 133 S. Ct. 1886, 1891 (2013) (citing 42 U.S.C. § 300aa-15(e)(3)). Instead, the special master or court awards attorneys' fees and costs, and the award is paid from the federal vaccine trust fund. 42 U.S.C. § 300aa-15(e)(1), (f)(4), (i)(2); *Rehn*, 126 Fed. Cl. at 91. If a petitioner prevails under the Act, the petitioner is automatically entitled to "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1)(A), (B); *Davis*, 105 Fed. Cl. at 634. If the petitioner loses, the presiding special master may award reasonable attorneys' fees and costs if the petition was brought in good faith and upon a reasonable basis. *Cloer v Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, ___ U.S. ___, 133 S. Ct. 1886; *Rehn*, 126 Fed. Cl. at 91 (quoting 42 U.S.C. § 300aa-15(e)(1)).

Petitioners bear the burden of showing that the requested attorneys' fees and costs are reasonable. *Caves*, 111 Fed. Cl. at 782; *Sabella v. Sec'y of Dep't of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009). As a general rule, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Morse v. Sec'y of Health & Human Servs.*, 93 Fed. Cl. 780, 790 (2010) (quoting *Saxton*, 3 F.3d at 1521) (emphasis in original).

### A. Attorneys' Fees

1. *Reducing Mr. Wright's hourly rate.*

The most senior attorney for petitioners, Mr. Bob F. Wright, had over 50 years of experience in legal practice and litigation but no prior work on vaccine cases. The chief special master began with a baseline rate of $275 per hour for an attorney with fifteen years of experience, as set forth in *Mooney*, 2014 WL 7715158, at *9, and then increased that rate by $50 per hour to reflect Mr. Wright's additional experience, per the guidelines set forth in *McCulloch*, 2015 WL 5634323, at *10. *Fees Decision* at 10-11.

Petitioners argue that the chief special master failed to consider two of the *McCulloch* factors in determining an hourly rate for Mr. Wright: overall legal experience and reputation in the community. Pet'rs' Mem. at 11-12. Although *McCulloch* posited a framework based upon categorizing attorneys based on years of legal experience, the special master in *McCulloch* also noted that an attorney's "skill, experience, and reputation" are relevant to the analysis. 2015 WL 5634323, at *13 (citing *Avera*, 515 F.3d at 1348). Petitioners argue that Mr. Wright's fifty-seven years of legal experience and strong reputation in the community warrant an hourly rate of $425, rather than $325. Pet'rs' Mem. at 11-12.

Here, the chief special master did consider Mr. Wright's legal experience, skill level, and reputation in determining a reasonable hourly rate. While acknowledging Mr. Wright's extensive legal experience, she noted that the case "appear[ed]" to be Mr. Wright's first in the Vaccine Program, and thus found it "difficult to determine [Mr. Wright's] reputation and skill level as compared to other petitioners in the [Vaccine] Program." *Fees Decision* at 11. Regardless of Mr. Wright's activities or expertise in the legal community at large, Mr. Wright appeared to lack the experience, reputation, and skill in the realm of vaccine petitions. In short, the chief special master increased Mr. Wright's hourly rate from a baseline of $275 to reflect his extensive general experience, but limited the increase to $50 because Mr. Wright had no prior vaccine-specific experience. Thus, the chief special master considered all relevant factors and adequately explained the basis for the $325 hourly rate. The chief special master did not abuse her discretion.

   *2. Excluding or reclassifying particular attorneys' hours.*

The chief special master performed a detailed analysis in excluding, reducing, and reclassifying attorneys' fees related to administrative and paralegal-level work, admission to the United States Court of Federal Claims Bar, travel time, research on civil remedies, and research regarding fundamental legal concepts about the Vaccine Program. *See Fees Decision* at 12-20. Petitioners, however, argue that the requested attorneys' fees are justified because the case was "complex" and "heavily litigated." Pet'rs' Mem. at 6. In support of this position, petitioners note that in the Vaccine Program, an attorney is required to "prepare his case as if every factual and legal issue will be contested, regardless of how straightforward or uncontested the case may appear with hindsight." *Id.* at 8 (quoting *Holton ex rel. Holton v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 391, 398 (1991)). Additionally, petitioners assert that a firm "must have discretion in the way it builds and presents its case[]" and that an evaluation of the hours spent on the case "should not be overly mechanical." *Id.* (quoting *McCulloch*, 2015 WL 5634323, at *22).

11

These arguments by petitioners related to advocacy and attorney discretion do not directly address the reasoning underlying the chief special master's decision to exclude or reclassify attorneys' hours. For example, the chief special master explained that secretarial and clerical tasks, such as arranging travel plans, scheduling meetings, or reviewing invoices, are not compensable in the Vaccine Program. *See Rochester*, 18 Cl. Ct. at 387; *Mostovoy*, 2016 WL 720969, at *5. She examined petitioners' requested attorneys' hours and noted each billing entry that was secretarial or clerical in nature. *Fees Decision* at 13-16. The chief special master performed a similarly detailed analysis with supporting case law in reducing attorneys' fees for paralegal-level work, admission to the United States Court of Federal Claims Bar, travel time, research on civil remedies, and research on fundamental concepts about the Vaccine Program. *Id.* at 12-20.

Although petitioners have an obligation to diligently prepare a vaccine petition and have discretion in how to present support for the petition, diligence and discretion do not allow petitioners to recover fees for hours that are not recoverable or not fully compensable at attorney-level rates under the Vaccine Program. Because the chief special master presented specific findings with sufficient explanations, the chief special master did not abuse her discretion in this regard.

   3. *Percentage reductions to attorneys' fees.*

A special master need not award attorneys' fees for "hours that are excessive, redundant, or otherwise unnecessary." *Valdes v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 415, 424-25 (2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In evaluating a fee request, a special master is permitted to reduce attorneys' hours found to be excessive by a percentage; a "line-by-line" determination is not required. *Saxton*, 3 F.3d at 1518-19; *Sabella*, 86 Fed. Cl. at 206 (citations omitted).

Even so, percentage reductions "are subject to heightened scrutiny." *Guerrero v. Sec'y of Health & Human Servs.*, 120 Fed. Cl. 474, 481-82 (2015) (quoting *International Rectifier Corp. v. Samsung Elecs. Co.*, 424 F.3d 1235, 1239 (Fed. Cir. 2005)). The special master must provide a "concise but clear" explanation as to why the fee reduction is justified. *International Rectifier Corp.*, 424 F.3d at 1239 (quoting *Hensley*, 461 U.S. at 437); *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *6 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (citations omitted). But in providing this explanation, the special master "is not required to explain how many hours are appropriate for any given task." *Broekelschen*, 2008 WL 5456319, at *6 (citations omitted).

Here, petitioners argue that the chief special master unreasonably reduced Andry Law Group's fees by 40 percent and Domengeaux Wright's fees by 20 percent. Pet'rs' Mem. at 9-10. Petitioners contend that the chief special master failed to recognize the need for multiple attorneys, relying primarily on *Holton*, 24 Cl. Ct. 391. Pet'rs' Mem. at 9-10. In *Holton*, the special master had reduced the hours of one attorney by 50 percent and a second attorney by 25 percent after finding "substantial duplication of effort" and excessive hours. 24 Cl. Ct. at 394. Upon review, the Court of Federal Claims vacated the decision and found the special master's percentage reduction to be arbitrary, reasoning:

12

>The special master's reduction for duplication of effort and for excessive time spent does not take into account the realities of conducting a law practice. We take judicial notice of the fact that litigation involves, *inter alia,* frequent travel, review of documents, communication with the court, with witnesses, with opposing counsel and with clients, legal research and drafting of pleadings and motions. . . . [I]t was reasonable for [the two attorneys] to collaborate on the Holton matter in order to assure that the litigation proceeded in a timely fashion.

*Id.* at 396-97.

The decision in *Holton*, however, is distinguishable from the chief special master's decision here. In *Holton*, the fees at issue related to a lead attorney and his associate. 24 Cl. Ct. at 394. In vacating the special master's judgment, the court stated that it was "reasonable for an experienced private practitioner to choose to share the various tasks involved in litigation with an associate." *Id.* at 397. Furthermore, the court found that the special master unreasonably deemed specific billing entries problematic. *Id.* (holding that the special master should not criticize an attorney for reviewing every case document or exclude reasonable work performed merely because the work did not result in a material contribution to the case).

In contrast, the chief special master here did not reduce attorneys' fees simply because multiple law firms and attorneys participated in the case. Instead, she found many of the specific billing entries unreasonable. *See Fees Decision* at 21-24. And, unlike in *Holton*, the chief special master did not criticize petitioners' attorneys for reviewing every document or performing work that did not ultimately contribute to the case. Rather, she found numerous and specific entries of unreasonably duplicative or excessive billing, such as: an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, attorneys entering erroneous billing entries, attorneys billing excessively for interoffice communications between Domengeaux Wright and Andry Law Group, and attorneys of Domengeaux Wright billing for work that was performed by Andry Law Group. *See id.*

For example, the chief special master found that on one day, Ms. Cumberland of Andry Law Group billed for work related to a status conference, then billed a second time for that same work. *Fees Decision* at 21. In another example, Mr. Andry and Ms. Cumberland both entered identical billing information for a variety of tasks, notably entering the same description "word-for-word . . . despite the number and variety of tasks performed." *Id.* at 21-22. The chief special master also found that, among other problematic billing entries, attorneys billed twice for conversations between two attorneys within the same firm, billed twice for discussions between Andry Law Group and Domengeaux Wright, billed twice for simple tasks, and billed for a review of e-mail exchanges between the two law firms. *Id.* at 21-24. Although it was reasonable to employ multiple attorneys, it was not reasonable for senior attorneys to bill for redundant work or extensive communications. *See id.* at 24.

Based upon the many duplicative or excessive billing entries, the chief special master determined that a percentage reduction of fees was justified. *Fees Decision* at 20, 23-24. This

13

methodology has been approved in prior vaccine cases. *See Sabella*, 86 Fed. Cl. at 214-15 (affirming the special master's reduction of attorneys' fees due to overstaffing and duplicative billing, and rejecting petitioner's argument that the special master failed to appreciate "the way cases are handled in the real world of civil litigation"); *Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 754-55 (1991) (affirming the special master's reduction of attorney hours because, despite the complexity of the case, the attorneys duplicated work and billed for an unreasonable number of hours); *Mostovoy*, 2016 WL 720969, at *5-6 (holding that an attorney could not recover any fee for certain work performed because, in part, the time billed and types of entries appeared excessive); *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan 31, 2013) (reducing attorneys' fees due to "excessive interoffice communications"); *Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6-8 (Fed. Cl. Spec. Mstr. June 7, 2011) (reducing attorneys' fees due to excessive intrafirm communications, duplicative work, and unnecessary meetings); *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (reducing the attorneys' number of hours where two attorneys both unreasonably billed for the same meetings with petitioner and with each other). Even in a case where a special master's reduction of fees was vacated, this court has noted that reductions will be upheld when supported by specific findings. *See Guerrero*, 120 Fed. Cl. at 481-82 (holding that the special master failed to adequately explain the reduction of fees, but also discussing cases where percentage reductions were properly applied based upon a reasoned explanation and specific findings).

Here, the chief special master provided an explicit, detailed explanation as to why a reduction of fees was appropriate, and supported that decision with specific findings. Thus, the chief special master did not abuse her discretion in reducing Andry Law Group's fees by 40 percent and Domengeaux Wright's fees by 20 percent.

### B. Costs

#### 1. Dr. Marcel Kinsbourne.

Petitioners' challenge the chief special master's award of $400 per hour for the work of medical expert Dr. Kinsbourne, given that Dr. Kinsbourne has received a $500 hourly rate in prior vaccine cases. *See* Pet'rs' Mem. at 12-13; *Simon*, 2008 WL 623833, at *6-8; *Adams v. Sec'y of Health & Human Servs.*, No. 01-267V, 2008 WL 2221852, at *1-2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008). Petitioners also assert that $500 per hour is reasonable because "Dr. Kinsbourne's work supplied the grounds for then-Chief Special Master Vowell's entitlement finding." Pet'rs' Mem. at 12; *see also Raymo*, 2014 WL 1092274, at *18-23.

Petitioners' arguments, however, fail to address the reasoning underlying the chief special master's award. The chief special master noted that while Dr. Kinsbourne previously received $500 per hour in certain vaccine cases, he also received less than $500 per hour in others. *See, e.g., Bhuiyan v. Sec'y of Health & Human Servs.*, No. 05-1269V, 2015 WL 2174208, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 16, 2015); *Faoro*, 2014 WL 5654330, at *3-4. The chief special master went on explicitly to distinguish the case at hand from *Simon*, 2008 WL 623833, the leading precedent for the larger hourly rate. Dr. Kinsbourne was experienced in

14

testifying about the alleged injuries in *Simon* and that allowed him to lend his expertise more efficiently, whereas former Chief Special Master Vowell found in this case that Dr. Kinsbourne was "not an ideal expert witness" because, in part, he did not treat, research, teach, or write about the injuries at issue.  *Fees Decision* at 25 (citing *Raymo*, 2014 WL 1092274, at *18); *see also Faoro*, 2014 WL 5654330, at *3-4 (distinguishing Dr. Kinsbourne's contributions in the case from his contributions in *Simon* to hold that a $500 hourly rate was unreasonable in *Faoro*).  As a result, Dr. Kinsbourne did not provide his expertise as efficiently as compared to his contributions in *Simon*, and thus did not warrant a $500 hourly rate.  *See Fees Decision* at 25-26.[14]  The chief special master did not abuse her discretion in reaching this decision.

### 2. Dr. Daniel Becker.

Attorneys in vaccine cases have an obligation to "monitor the expert's overall fees to ensure that the fees remain reasonable."  *Caves*, 111 Fed. Cl. at 781 (internal quotation marks and citations omitted).  "A special master can decline to award compensation to an expert if the petitioner failed to provide a sufficient explanation of the expert's qualifications or the work that the expert performed."  *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *15 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (citations omitted).

Furthermore, petitioners bear the burden of showing that the costs expended were reasonable.  *Caves*, 111 Fed. Cl. at 782.  In meeting this burden, petitioners must provide "reasonably specific documentation" to support the costs requested.  *Ceballos*, 2004 WL 784910, at *13 (quoting *Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1146 (Fed. Cir. 1993)); *see also Valdes*, 89 Fed. Cl. at 424 ("Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request.") (quoting *Broekelschen*, 2008 WL 5456319, at *4-5).  The special master may reduce the requested award accordingly if the documentation is inadequate.  *Bell v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 751, 760 (1989) (citations omitted); *see also Mostovoy*, 2016 WL 720969, at *6 ("[T]he undersigned will not compensate Mr. McHugh for the 347.65 hours for which the billing entries are vague, the time expended is excessive, the task appears irrelevant to petitioners' medical theory, and/or the billing entry constitutes block billing.").

Here, petitioners failed to provide detailed billing records for Dr. Becker, former Chief Special Master Vowell found by a preponderance of the evidence that Dr. Becker plagiarized his expert report, and former Chief Special Master Vowell did not rely on Dr. Becker's opinion in making a determination in the case.  *See Fees Decision* at 26-28; *Raymo*, 2014 WL 1092274, at *13-14.  Petitioners had the burden of demonstrating that Dr. Becker's fees and contributions to the case were documented and reasonable.  The chief special master adequately explained that petitioners did not meet this burden, and thus she did not abuse her discretion in not allowing any recovery for Dr. Becker's costs.

### 3. *Life care planners*.

---

[14]Dr. Kinsbourne billed only 31.75 hours in *Simon*.  2008 WL 623833, at *8.  In contrast, he billed 68.20 hours in this case.  *Fees Decision* at 25.

15

Petitioners bear the burden of establishing that a cost is reasonable and providing sufficient documentation, as discussed *supra*. Here, petitioners provided billing statements for the life care planners, but those statements failed to adequately explain the hours spent on the case, rate charged, or work performed. *Fees Decision* at 28. The lack of detailed billing information made it "impossible to determine the reasonableness of the time expended by the life care planners." *Id.* at 29. Additionally, the life care planners requested hourly rates above $500 per hour, which is higher than the chief special master had ever previously awarded. *Id.* at 28-29. Given the vague documentation and excessive rates, the chief special master did not abuse her discretion in reducing the life care planners' costs by 50 percent.

    *4. Travel expenses.*

Petitioners challenge the chief special master's decision to reduce certain travel expenses as arbitrary, and argue that the travel accommodations used were more reasonable than any available alternatives.

The chief special master provided a specific explanation as to why a reduction was appropriate. She considered petitioners' use of a charter flight and "Little Rock Limousine" to be excessive. *Fees Decision* at 31. A decision not to award costs for travel expenses is appropriate when petitioner fails to show that the expenses were reasonably necessary. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 732 (2011) (affirming the special master's disallowance of expenses related to an attorney's first day of travel because the attorney chose to arrive one day earlier than was required); *Hines*, 22 Cl. Ct. at 755 (affirming the special master's disallowance of certain travel expenses by an attorney because the attorney failed to demonstrate that the trip was necessary). Petitioners assert that the travel expenses at issue were reasonable and cheaper than the alternative, but fail to provide any support for their claim. *See Hines*, 22 Cl. Ct. at 755 (holding that petitioner failed to justify travel expenses related to a hearing because petitioner only provided a "bald allegation" that it was necessary for multiple attorneys to be involved at the hearing). Thus, the chief special master did not abuse her discretion.

    *5. Interest.*

Finally, petitioners' challenge the chief special master's decision not to allow any costs related to the interest accumulated on petitioners' loan. Pet'rs' Mem. at 17-18. The chief special master concluded that an interest award was unreasonable. *Fees Decision* at 31.

As a general matter, "interest cannot be recovered in a suit against the [g]overnment in the absence of an express waiver of sovereign immunity from an award of interest." *Preseault v. United States*, 52 Fed. Cl. 667, 677 (2002) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 114, 105 Stat. 1071 (1991)). This "no-interest rule" can only be waived by a specific provision in a contract or statute, or by the express consent of Congress. *England v. Contel Advanced Sys., Inc.*, 384 F.3d 1372, 1379 (Fed. Cir. 2004) (citing *Shaw*, 478 U.S. at 317). "[A] general waiver as to attorneys' fees, without more, does not waive the sovereign's immunity from interest." *Preseault*, 52 Fed. Cl. at 677 (citing *Shaw*, 478 U.S. at 318-19).

16

The no-interest rule has been applied in the analogous context of the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970 ("Uniform Relocation Act"), Pub. L. No. 91-646, § 304, 84 Stat. 1906 (codified at 42 U.S.C. § 4654). Under the Uniform Relocation Act, a prevailing plaintiff is entitled to reimbursement from the government for, among other things, reasonable attorneys' fees and costs. 42 U.S.C. § 4654(c). However, the Act does not expressly provide for reimbursement of accumulated interest. *See id.*; *see also Preseault*, 52 Fed. Cl. at 670; *Shelden v. United States*, 41 Fed. Cl. 347, 351 (1998), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999). Thus, consistent with the no-interest rule, courts addressing Section 4654 under the Uniform Relocation Act have not awarded claims for interest on attorneys' fees or costs. *See Preseault*, 52 Fed. Cl. at 677 (noting that plaintiffs cannot recover interest on attorneys' fees and expenses); *Shelden*, 41 Fed. Cl. at 353 ("[P]laintiffs cannot recover interest on fees spent litigating the case."); *see also Applegate v. United States*, 52 Fed. Cl. 751, 770-71 (2002) (noting that although the Fifth Amendment provides for interest related to the property at issue, it does not allow for the recovery of interest on attorneys' fees and expenses), *aff'd*, 70 Fed. Appx. 582 (Fed. Cir. 2003). Correlatively, the no-interest rule has also been applied in contract disputes. *See England*, 384 F.3d at 1379 ("The [no-interest] rule has been held not only to bar the recovery of interest on substantive claims against the government . . . but also interest costs incurred on money borrowed as a result of the government's breach or delay in payment.") (internal citations omitted).

Here, similar to the Uniform Relocation Act, the Vaccine Act provides for reasonable attorneys' fees and costs, but does not provide for an award related to interest accumulated on those fees and costs. *See* 42 U.S.C. § 300aa-15. Though petitioners request costs for interest on a loan to finance the case, rather than interest on attorneys' fees, the same no-interest principle is applicable because there is no provision, whether by statute, contract, or consent of Congress, that allows for such an award. Thus, the chief special master did not abuse her discretion in not awarding any costs for interest.

## CONCLUSION

For the reasons stated, petitioners' motion for review of the chief special master's decision awarding attorneys' fees and costs is DENIED, and the chief special master's decision on attorneys' fees and costs is AFFIRMED.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge